PEOPLE v POOLE

Docket Nos. 169867, 169987. Submitted March 16, 1996, at Lansing. Decided September 17, 1996, at 9:00 A.M.

Terry L. Poole was convicted following separate jury trials in the Saginaw Circuit Court, William A. Crane, J., of delivery of 50 grams or more, but less than 225 grams, of cocaine and of possession with intent to deliver 50 grams or more, but less than 225 grams, of cocaine. The defendant was sentenced to consecutive prison terms of thirteen to twenty years and life imprisonment without eligibility for parole for the respective convictions. The defendant appealed each conviction, and the appeals were consolidated.

The Court of Appeals *held*:

1. The trial court did not err in denying the defendant's motion to suppress as evidence the items seized at the defendant's place of residence pursuant to a search warrant. In support of the motion, the defendant argued that substantial evidence did not exist for the magistrate to conclude that probable cause existed to search the residence. An affidavit used to secure a search warrant must provide sufficient facts from which a magistrate can find that the information supplied was based on personal knowledge and that either the person supplying the information was credible or the information was reliable. Hearsay statements in an affidavit may be used to establish probable cause where the requirements of personal knowledge and credibility or reliability are met. The averment in the affidavit in this case that an informant had been told that the defendant had just moved to the address that became the subject of the warrant by the person with whom the defendant had previously lived satisfied the personal knowledge and credibility requirements. The reliability of that information was supported by the fact that the affiant found that the address supplied by the informant also had been listed in the defendant's jail records as the address at which a relative could be contacted. Under the circumstances, there was a substantial basis for the magistrate's finding of probable cause to search the subject address.

2. The trial court did not err in imposing a sentence of life imprisonment without eligibility for parole for the conviction of possession with intent to deliver. MCL 333.7413(1); MSA

14.15(7413)(1) provides that an individual "who was convicted previously" of certain designated controlled substance offenses and is "thereafter convicted of a second or subsequent violation" of those same designated offenses is to be imprisoned for life and is not eligible for parole. Both of the offenses of which the defendant was convicted are among the offenses listed in § 7413(1). Therefore, because the defendant was convicted of delivery of 50 or more grams, but less than 225 grams, of cocaine, he came within the scope of the sentence enhancement provision of § 7413(1) and was properly sentenced to life imprisonment without parole for the conviction of possession with intent to deliver an amount of cocaine in the same range. Because § 7413(1), unlike some other sentence enhancement statutes that speak in terms of committing an offense or violation after having been convicted of a prior offense or violation, provides for sentence enhancement where the second or subsequent conviction occurs after the first conviction, the enhanced sentence for his conviction of possession with intent to deliver was appropriate in this case in spite of the fact that the possession offense was committed before defendant was convicted of the delivery offense.

3. The enhanced sentence of life imprisonment without eligibility for parole imposed with respect to the conviction of possession with intent to deliver does not constitute cruel or unusual punishment within the meaning of Const 1963, art 1, § 16. The Legislature could properly determine that a second or subsequent conviction of the delivery of or possession with intent to deliver fifty or more grams of cocaine is sufficient to warrant a sentence of life imprisonment without eligibility for parole without violating the constitutional prohibition against cruel or unusual punishment.

4. The failure of defendant's trial counsel to seek consolidation of the trials of the two charges has not been shown to amount to ineffective assistance of counsel. Not only has the defendant failed to demonstrate on appeal that a motion to consolidate would have been granted if it had been made by counsel, but also there appear to be sound reasons why counsel, as a matter of trial strategy, may have felt that separate trials were preferable.

5. Any claim that the defendant is entitled to be resentenced with respect to the delivery conviction is rendered moot by the affirming of the life sentence without eligibility for parole for the possession with intent to deliver conviction.

Affirmed.

HOLBROOK, JR., P.J., concurring in part and dissenting in part, stated that the defendant's convictions should be affirmed but that the life sentence should be set aside and the matter should be

remanded for resentencing because the language of MCL 333.7413(1); MSA 14.15(7413)(1) is susceptible to more than one interpretation concerning the required sequence of offenses and convictions and, thus, the common-law rule that sentence enhancement requires that the conviction of the prior offense precede the commission of the subsequent offense should apply.

1. SEARCHES AND SEIZURES — SEARCH WARRANTS — AFFIDAVITS — PROBABLE CAUSE.

An affidavit in support of an application for a search warrant must provide sufficient facts from which a magistrate can find that the information in the affidavit is based on personal knowledge and that either the unnamed informant supplying the information was credible or that the information was reliable; hearsay statements in an affidavit may be used to establish probable cause where the requirements of personal knowledge and credibility are met.

2. CONTROLLED SUBSTANCES — SECOND OR SUBSEQUENT CONVICTIONS — SENTENCE ENHANCEMENT.

Sentence enhancement for a second or subsequent conviction of delivery of or possession with intent to deliver at least 50 grams but less than 650 grams of a schedule 1 or 2 drug or cocaine or of conspiracy to do the same may be based on an offense for which the conviction occurred after the conviction of the prior offense even though commission of the second or subsequent offense preceded the conviction of the prior offense (MCL 333.7413[1]; MSA 14.15[7413][1]).

3. CONSTITUTIONAL LAW — CONTROLLED SUBSTANCES — LIFE SENTENCES — CRUEL OR UNUSUAL PUNISHMENT.

The life sentence without eligibility for parole for a second or subsequent conviction of delivery of or possession with intent to deliver at least 50 grams, but less than 650 grams, of a schedule 1 or 2 drug or cocaine or of conspiracy to do the same does not violate the constitutional prohibition against cruel or unusual punishment (Const 1963, art 1, § 16; MCL 333.7413[1]; MSA 14.15[7413][1]).

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, *Michael D. Thomas*, Prosecuting Attorney, and *Catherine Langevin Semel*, Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Richard B. Ginsberg*), for the defendant on appeal.

Before: HOLBROOK, JR., P.J., and TAYLOR and W. J.
NYKAMP,* JJ.

TAYLOR, J. Defendant was convicted following sepa-
rate jury trials of delivery of 50 grams or more, but
less than 225 grams, of cocaine, MCL 333.7401(2)
(a)(iii); MSA 14.15(7401)(2)(a)(iii), and possession
with intent to deliver 50 grams or more, but less than
225 grams, of cocaine, MCL 333.7401(2)(a)(iii); MSA
14.15(7401)(2)(a)(iii).[1] He was sentenced to serve
consecutive prison terms of thirteen to twenty years
and nonparolable life imprisonment, respectively. He
appeals as of right, and we affirm.

I

Defendant first argues that the lower court erred in
denying his motion to declare void the search warrant
for 602 Holden Street and to suppress the fruits of
that search because substantial evidence did not exist
for the magistrate to conclude that probable cause
existed to search the residence. In reviewing a magis-
trate's decision to issue a search warrant, this Court
must evaluate the search warrant and underlying affi-
davit in a common-sense and realistic manner. This
Court must then determine whether a reasonably cau-
tious person could have concluded, under the totality
of the circumstances, that there was a substantial
basis for the magistrate's finding of probable cause.
*People v Sloan,* 450 Mich 160, 168; 538 NW2d 380
(1995); *People v Russo,* 439 Mich 584, 603; 487 NW2d
698 (1992).

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] We note that the judgment of sentence in No. 93-7218-FH lists an
incorrect statutory citation for the conviction of the offense of possession
with intent to deliver cocaine.

Defendant specifically argues that the search warrant affidavit did not establish probable cause to believe that a nexus existed between him and 602 Holden Street. We disagree.

A search warrant affidavit must provide sufficient facts from which a magistrate could find that the information supplied was based on personal knowledge and that *either* the unnamed person was credible *or* the information was reliable. MCL 780.653; MSA 28.1259(3). Here, the affiant averred that informant Norman Wilson had been told by Kevin Jackson that defendant had moved to the Holden Street address. Such multiple hearsay statements may be used to establish probable cause where the ordinary requirements of personal knowledge and reliability or credibility are met. *People v Harris*, 191 Mich App 422, 425-426; 479 NW2d 6 (1991); *People v Brooks*, 101 Mich App 416, 419; 300 NW2d 582 (1980). Jackson's statement that defendant had moved to the Holden Street address was made with personal knowledge and could be viewed as credible given that defendant had just moved out of Jackson's home. Moreover, defendant's connection with the Holden Street address was independently verified by the affiant, who checked defendant's jail records and found that they listed Holden Street as the address where a relative could be contacted. The affiant further averred that a person named "Whinnie" had stated he was at "Terry's place" on Holden Street. Although this information did not confirm defendant's current residence, it did bolster the information provided by Kevin Jackson that defendant was then residing at the Holden Street address. *Harris, supra.* Finally, "Whinnie's" credibility as an informant was shown by the state-

ments he made against his penal interest. See *People v Head*, 211 Mich App 205, 209; 535 NW2d 563 (1995). Accordingly, under the totality of the circumstances, we conclude that a substantial basis existed for the district judge's finding of probable cause to search 602 Holden Street. Defendant's motion to suppress was properly denied.

II

On September 9, 1992, defendant delivered cocaine to a police officer. On September 17, 1992, the police found cocaine in defendant's jacket while executing a search warrant. Defendant subsequently was convicted by separate juries at separate trials of delivery of more than 50 grams but less than 225 grams of cocaine on August 27, 1993, and possession with intent to deliver more than 50 grams but less than 225 grams of cocaine on September 3, 1993. Defendant was sentenced to serve consecutive prison terms of thirteen to twenty years and life without parole, respectively.

Defendant argues that the trial court erred in sentencing him as a second offender under MCL 333.7413(1); MSA 14.15(7413)(1) because the offense resulting in his second conviction occurred before he was convicted for the first offense. We disagree.

MCL 333.7413; MSA 14.15(7413) prescribes the penalties for repeat controlled substance offenders. The first three subsections of § 7413 describe different groups of offenses and provide different enhanced penalties for each group. Section 7413(1) requires nonparolable life sentences for individuals who commit a second or subsequent offense involving more than fifty grams of a schedule 1 or 2 narcotic drug or

cocaine, or conspiring to commit such offenses. Section 7413(3) subjects individuals who are second or subsequent offenders under MCL 333.7410(2) and (3); MSA 14.15(7410)(2) and (3) (delivery or possession with intent to deliver schedule 1 or 2 narcotics or cocaine to a minor within 1,000 feet of a school property) to mandatory enhanced prison terms (although the court may depart from the mandatory minimum sentence upon a finding of substantial and compelling reasons). Section 7413(2) provides discretionary enhanced sentences for individuals who are convicted of any other second or subsequent offenses under the controlled substances act (delivery offenses involving less than fifty grams, possession offenses involving twenty-five to fifty grams, and conspiracies to commit these offenses).

MCL 333.7413; MSA 14.15(7413) provides, in pertinent part:

(1) An individual who was convicted previously for a violation of any of the following offenses and is thereafter convicted of a second or subsequent violation of any of the following offenses shall be imprisoned for life and shall not be eligible for probation, suspension of sentence, or parole during that mandatory term:

(a) A violation of section 7401(2)(a)(ii) or (iii).

(b) A violation of section 7403(2)(a)(ii) or (iii).

(c) Conspiracy to commit an offense proscribed by section 7401(2)(a)(ii) or (iii) or section 7403(2)(a)(ii) or (iii).

More plainly stated, these sections prohibit the manufacture, creation, delivery, or possession with intent to manufacture, create, or deliver, at least 50 grams but less than 225 grams, or at least 225 grams but less than 650 grams of a schedule 1 or 2 narcotic or cocaine; or possession of at least 50 grams but less

than 225 grams, or at least 225 grams but less than 650 grams, of a schedule 1 or 2 narcotic drug or cocaine; or conspiracy to commit one of the foregoing offenses. See Managing a Trial Under the Controlled Substances Act (Michigan Judicial Institute, 1995), pp 332-333.

As applicable to defendant, MCL 333.7413(1); MSA 14.15(7413)(1) provides that an individual who was convicted previously of delivery of more than 50 grams but less than 225 grams of cocaine and is thereafter convicted of possession with intent to deliver more than 50 but less than 225 grams of cocaine shall be imprisoned for life without eligibility for parole. Thus, the trial court imposed a nonparolable life sentence for defendant's conviction of possession with intent to deliver 50 grams or more but less than 225 grams of cocaine because defendant had previously been convicted of delivering more than 50 but less than 225 grams of cocaine.

The issue is whether the trial court properly construed MCL 333.7413(1); MSA 14.15(7413)(1) as requiring that defendant receive a nonparolable sentence for his second conviction. The goal of statutory construction is to ascertain and give effect to the intent of the Legislature. *People v Stanaway*, 446 Mich 643, 658; 521 NW2d 557 (1994). If a statute is clear, the courts must enforce its directive. *People v Morris*, 450 Mich 316, 325; 537 NW2d 842 (1995). It is only where a statute is unclear and susceptible to more than one interpretation that judicial construction is allowed. *Id.* The Legislature is presumed to have intended the meaning it plainly expressed. *People v Cannon*, 206 Mich App 653, 655; 522 NW2d 716 (1994). Although penal in nature, § 7413(1) is part of

the Public Health Code, which is to be "liberally construed for the protection of the health, safety, and welfare of the people." MCL 333.1111(2); MSA 14.15(1111)(2). Thus, it is a court's duty to construe § 7413(1) in a manner that most effectively protects the health, safety, and welfare of the public and effects the object sought to be advanced by the statute. *Morris, supra* at 327.

Section 7413(1) is not ambiguous, and it clearly requires a nonparolable life sentence where a defendant was "convicted previously" of an enumerated offense and thereafter is "convicted" of an enumerated offense. At the time defendant was convicted of possession with intent to deliver 50 grams or more but less than 225 grams of cocaine, he had been "convicted previously" of an enumerated offense. Thus, defendant's situation fits within the terms of § 7413(1), and the trial court properly sentenced him to a nonparolable term in prison.

Defendant argues that § 7413(1) should not have been applied to him because he committed his second offense before he had been convicted of the first offense. This argument is simply not supported by the unambiguous statutory language used by the Legislature, which we must enforce. For defendant's argument to prevail, we would have to rewrite § 7413(1). This statute, as written, provides for a nonparolable life sentence for a defendant "convicted previously" who "is thereafter convicted." Defendant, however, would require this Court to change "is thereafter convicted" to read "[who] thereafter commits" an offense. This we cannot do.

The trial court's construction of the statute is consistent with *People v Roseburgh*, 215 Mich App 237,

239; 545 NW2d 14 (1996), which found that sentence enhancement under § 7413(2) only requires convictions to follow one another with no temporal requirement regarding the sequence of the crimes. Although *Roseburgh* is not controlling because it dealt with a different subsection of the statute, it is persuasive and a similar result is appropriate in this case.

We are aware that other repeat offender statutes have been construed by our courts to require that a prior conviction precede the commission of the second offense. However, the statutory language under examination in those cases was sufficiently different to render those cases inapplicable. *Roseburgh, supra* at 239, n 1. In *People v Pruess*, 436 Mich 714; 461 NW2d 703 (1990), the Court held that a defendant could not be punished as a fourth-offense habitual offender unless the fourth offense was preceded by three felony convictions. Yet, an examination of the language in the habitual offender statutes makes this result appropriate and lends support to our interpretation of § 7413(1). The habitual offender statutes, MCL 769.10-769.12; MSA 28.1082-28.1084, provide that a person who "commits" a subsequent felony after being convicted of one, two, or three prior felonies, may be punished as a repeat felony offender. The important distinction is the fact that the Legislature used the word "commits" and not "convicted" in describing what must occur after a person has a prior felony conviction.

Similarly, *People v Erwin*, 212 Mich App 55, 60; 536 NW2d 818 (1995), stated that a drunk-driving conviction may not be used for enhancement purposes unless the date of conviction precedes the date of the second offense. This statement was entirely appropri-

ate because the repeat offender provisions of the drunken-driving statute, MCL 257.625(7)(b) and (d); MSA 9.2325(7)(b) and (d), provide that if "the violation occurs within seven years of a prior conviction" or if "the violation occurs within ten years of two or more prior convictions," a defendant may be treated as a repeat offender. Once again, the Legislature did not use the word "conviction" but used the word "violation" in describing what must occur after a first conviction. The wording used in these three repeat offender statutes shows clearly that the Legislature has demonstrated that it knows how to use language requiring that a defendant must commit an offense after a conviction before the defendant may be considered a repeat offender when it so chooses, i.e., it uses words like "commit" and "violation" to describe what must occur after the first conviction. *Morris, supra* at 329-330 (if the Legislature means to limit the reach of a statute, it has demonstrated the ability to do so); *People v Bewersdorf*, 438 Mich 55, 72; 475 NW2d 231 (1991) (the Legislature has demonstrated when it intends to do so, that it is capable of excluding a particular category of felonies from the sentence enhancement of the habitual offender act). We must respect this legislative distinction. The dissent, however, fails to do so.

The case that is most supportive of the defendant's position, and facially problematic to our approach, is *People v Stewart*, 441 Mich 89, 95; 490 NW2d 327 (1992), which limited *People v Sawyer*, 410 Mich 531; 302 NW2d 534 (1981). Yet, properly understood, *Stewart* and *Sawyer* stand in harmony with our analysis. *Sawyer* was a case in which the Court construed the repeat offender portion of the felony-firearm statute

that requires a lengthier sentence "upon a second" or "third" conviction. *Sawyer* held that a defendant should not be sentenced as a second felony-firearm offender unless the second offense is committed after the first conviction. In reasoning to this conclusion, the Court stated that a number of purposes are served when the Legislature increases punishment for repeat offenders, including providing more severe punishment for people who decline to change their ways following an opportunity to reform. The clinching rationale for the Court's holding was the rule of lenity, which holds that ambiguities in penal statutes must be resolved against the imposition of harsher punishments. *People v Smith*, 423 Mich 427, 446; 378 NW2d 384 (1985).[2] Thus, the construction that held that the second offense must occur after the first conviction was doctrinally sound.[3] This rule was limited in *Stewart*, where the Court stated that a defendant may be convicted of felony-firearm, third offense, if the third offense is preceded by two felony-firearm convictions that arose out of separate criminal incidents.

The holdings of *Sawyer* and *Stewart* are inapplicable to the case at bar because the rule of lenity is inapplicable. The felony-firearm statute is part of the

---

[2] The rule of lenity applies only in the absence of a firm indication of legislative intent. *People v Wakeford*, 418 Mich 95, 113-114; 341 NW2d 68 (1983). In fact, MCL 750.2; MSA 28.192 provides that the rule that a penal statute is to be strictly construed shall not apply to the Michigan Penal Code and all its provisions shall be construed according to the fair import of their terms, to promote justice and to effect the objects of the law.

[3] *Sawyer* was a four to three decision. Justice T. G. KAVANAGH stated he was sympathetic to the efforts of the majority to read sense into the statute by construing it as they did, but dissented because he felt constrained to enforce the statute as the Legislature wrote it.

Penal Code, which is subject to the rule of lenity,[4] whereas § 7413(1) is part of the Public Health Code, which must be liberally construed for the protection of the health, safety, and welfare of the public. The *Stewart* Court believed the Legislature wanted to provide an opportunity to reform oneself after having been first convicted before the additional prison time required for repeat felony-firearm offenders was applicable. Here, however, there is no good reason to make the same assumption. Indeed, the Legislature in passing drug laws has focused more on protecting the public than providing drug dealers with an opportunity for reform. The Legislature has provided for nonparolable life sentences for first-time offenders who possess,[5] deliver, or possess with an intent to deliver more than 650 grams of a schedule 1 or 2 narcotic or cocaine.

For all the foregoing reasons, the trial court properly interpreted § 7413(1) as requiring that defendant be sentenced to a nonparolable life term. We recognize that many would consider this penalty to be harsh. Nevertheless, judicial misgivings regarding the wisdom of a legislative sentencing policy do not provide, absent a violation of the constitution, a legal foundation for overriding legislative intent. *Morris, supra* at 335. The wisdom of this policy is a political question to be resolved in the political forum. *Id.*

---

[4] See, however, n 2, *ante* at 713.

[5] The Supreme Court found this penalty violated the Michigan constitutional prohibition against cruel or unusual punishment. *People v Bullock,* 440 Mich 15; 485 NW2d 866 (1992). Nevertheless, the Legislature's desire not to give any opportunity for rehabilitation was made clear by the statute.

III

Defendant next argues that a mandatory life sentence constitutes "cruel and/or unusual" punishment because he was not given a chance to reform before facing a mandatory life sentence.[6] In determining whether a sentence is cruel or unusual, we look to the gravity of the offense and the harshness of the penalty, comparing the penalty to those imposed for other crimes in this state as well as the penalty imposed for the same offense by other states and considering the goal of rehabilitation. *People v Launsburry*, 217 Mich App 358, 363; 551 NW2d 460 (1996). Past decisions of the Michigan Supreme Court have found mandatory drug sentences in violation of Const 1963, art 1, § 16 as cruel or unusual punishment. *People v Lorentzen*, 387 Mich 167, 176; 194 NW2d 827 (1972), held that a statute mandating a minimum term of twenty years' imprisonment for the sale of any amount of marijuana was unconstitutionally excessive. In *People v Bullock*, 440 Mich 15, 30; 485 NW2d 866 (1992), the Supreme Court held that a mandatory life sentence for possession of 650 grams or more of cocaine violated the constitutional ban against "cruel or unusual" punishments.[7] The Supreme Court, how-

---

[6] Defendant does not argue that his sentence is "disproportionate" as that term was used in *People v Milbourn*, 435 Mich 630, 650; 461 NW2d 1 (1990), because *Milbourn* has no applicability to legislatively mandated sentences. *People v Bullock, supra* at 34, n 17.

[7] The *Bullock* Court erroneously stated that Michigan required mandatory life sentences only for first-degree murders and drug offenses involving more than 650 grams. *Bullock, supra* at 39-40. However, *People v Fernandez*, 427 Mich 321, 337; 398 NW2d 311 (1986), states that treason and placing explosives with an intent to destroy that causes injury to a person also carry mandatory life sentences. The *Bullock* Court also failed to note the statute we are considering in this case that also provides for life without parole for certain repeat drug offenders.

ever, refused to extend the *Bullock* holding to cases involving delivery or possession with intent to deliver more than 650 grams of cocaine, or conspiracy to do the same. *People v Fluker*, 442 Mich 891 (1993); *People v Stewart*, 442 Mich 890 (1993); *People v Lopez*, 442 Mich 889 (1993); *People v Loy-Rafuls*, 442 Mich 915 (1993). See also *People v DiVietri*, 206 Mich App 61, 63-65; 520 NW2d 643 (1994).

At the outset, we reject defendant's claim that a mandatory life sentence is cruel or unusual per se unless he was given an opportunity to reform before imposition of such a sentence. This claim is of no avail to this defendant in any case because he did have a chance to reform himself. He could have realized he had made a gross mistake and have reformed himself after committing his first offense. *People v Bettistea (After Remand)*, 181 Mich App 194, 202; 448 NW2d 781 (1989). The opportunity to reform began immediately after he committed his first offense, not after he was first arrested or convicted.

We further reject defendant's claim that his mandatory life sentence constitutes cruel or unusual punishment given the gravity of the offense and our Supreme Court's refusal to extend *Bullock* to delivery-related drug offenses. As previously stated, mandatory life sentences have been found to be constitutional for first-time offenders who (1) possess with intent to deliver more than 650 grams of cocaine, (2) deliver more than 650 grams of cocaine, or (3) conspire to deliver or to possess with the intent to deliver more than 650 grams. Here, defendant was a repeat drug offender who was convicted of delivering more than 50 but less than 225 grams of cocaine and of possession with intent to deliver the

same amount. We find, under the rationale of *Fluker*, *Stewart*, *Lopez*, and *Loy-Rafuls*, that the Legislature may impose a mandatory life sentence upon repeat cocaine dealers who deliver or possess with intent to deliver more than fifty grams of cocaine without violating the constitutional prohibition against cruel or unusual punishment.

IV

Defendant next argues that he was deprived of his right to effective assistance of counsel because his counsel's failure to request consolidation of his two cases for trial subjected him to a nonparolable life sentence. Defendant claims that if his counsel had had his two charges consolidated, and if he had been convicted of both charges, then he could not have been subject to a nonparolable life sentence because there would not have been a prior conviction.

In *People v Pickens*, 446 Mich 298, 302; 521 NW2d 797 (1994), the Supreme Court adopted the federal test for reviewing claims of ineffective assistance of counsel under the Michigan Constitution. The *Pickens* Court stated that to find prejudice a court must conclude that there is a reasonable probability that, absent counsel's errors, the factfinder would have had a reasonable doubt respecting guilt. *Id.* at 312. The *Pickens* Court *id.*, n 12, then stated as follows:

> Furthermore,
> "an analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective. To set aside a conviction or sentence solely because the outcome would have been different but for counsel's errors may grant the defendant a windfall to which the law does

not entitle him." [*Lockhart v Fretwell*, 506 US (364), (369); 113 S Ct 838; 122 L Ed 2d 180, 189 (1993).]

Also, the lead opinion in *People v Reed*, 449 Mich 375, 401, n 21; 535 NW2d 496 (1995), states:

> The proper inquiry is not whether "there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *Strickland* [*v Washington*, 466 US 668, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984)]. An analysis that focuses "solely on outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective." *Lockhart v Fretwell, supra* at 369.

Thus, in order to establish that counsel was ineffective, defendant must show that but for counsel's error there is a reasonable probability that the result of the proceeding would have been different *and* that the result of the proceeding was fundamentally unfair or unreliable. *Pickens, supra; Reed, supra.*

We are satisfied that defendant is not entitled to any relief regarding this claim. Because defendant did not move to create an evidentiary record to support this claim, our review is limited to the existing record. *People v Armendarez*, 188 Mich App 61, 73-74; 468 NW2d 893 (1991). Defendant has failed to demonstrate that a motion to consolidate necessarily would have been granted. Further, defendant has not overcome the strong presumption that counsel's assistance constituted sound trial strategy. *Stanaway, supra* at 687. Counsel may not have wanted to consolidate the two cases because the chances for an acquittal in either case would have been reduced if the jury heard both cases against defendant. This is especially the case here because the proofs relating

to the possession with intent to deliver charge were not as strong as the proofs relating to the delivery charge. Further, if the motion to consolidate had been granted and defendant was convicted of both charges, he still would have been subject to a very lengthy prison term once the sentences were made consecutive pursuant to MCL 333.7401(3); MSA 14.15(7401)(3) and doubled under MCL 333.7413(2); MSA 14.15(7413)(2). It can be anticipated that this would have precipitated a claim that moving for consolidation of the two cases was ineffective assistance of counsel. The limning of the dilemma with which counsel was faced bespeaks the strategic nature of the decision that was made.

Finally, defendant claims that he is entitled to resentencing with respect to his delivery conviction, for which he received thirteen to twenty years. Even if defendant is correct, he is not entitled to any relief because we are upholding his mandatory life sentence. *People v Turner*, 213 Mich App 558, 585; 540 NW2d 728 (1995).

Affirmed.

W. J. NYKAMP, J., concurred.

HOLBROOK, JR., P.J. (*concurring in part and dissenting in part*). I agree with the majority that defendant's conviction should be affirmed. However, because the second-offender provision of MCL 333.7413(1); MSA 14.15(7413)(1) does not apply in this case, I would remand for resentencing.

In this case, defendant committed the delivery offense[1] (offense I) on September 9, 1992, and eight

---

[1] MCL 733.7401(2)(a)(iii); MSA 14.15(7401)(2)(a)(iii).

days later, on September 17, 1992, committed the possession with intent to deliver offense[2] (offense II). He was convicted of offense I on August 27, 1993, and convicted of offense II on September 3, 1993. At sentencing, the prosecutor argued that MCL 333.7413(1); MSA 14.15(7413)(1) required that defendant receive a nonparolable life sentence for his conviction of offense II because his conviction of offense I preceded that conviction. The trial court expressly noted its lack of sentencing discretion under subsection 7413(1) and imposed a term of nonparolable life imprisonment for defendant's conviction of offense II.

MCL 333.7413; MSA 14.15(7413) provides, in pertinent part:

> (1) An individual who was convicted previously for a violation of any of the following offenses and is thereafter convicted of a second or subsequent violation of any of the following offenses shall be imprisoned for life and shall not be eligible for probation, suspension of sentence, or parole during that mandatory term:
>
> (a) A violation of section 7401(2)(a)(ii) or (iii).
> (b) A violation of section 7403(2)(a)(ii) or (iii).
> (c) Conspiracy to commit an offense proscribed by section 7401(2)(a)(ii) or (iii) or section 7403(2)(a)(ii) or (iii).

To determine whether subsection 7413(1) requires that an offense resulting in a second conviction occur after a defendant's previous conviction, we must look first at the express terms of the statute. The statute clearly includes a temporal component, inasmuch as it includes phrases such as "convicted *previously*" and "*thereafter* convicted of a *second or subsequent* violation." These temporal phrases, however, are sus-

---

[2] MCL 733.7401(2)(a)(iii); MSA 14.15(7401)(2)(a)(iii).

ceptible of more than one interpretation. Most important for our purposes is to determine how the phrase "second or subsequent" is to be applied, i.e., "second or subsequent" to what? On the one hand, the phrase could mean that the "second or subsequent violation" occur following the "previous" conviction. On the other hand, the phrase could mean that the violation for which a mandatory life term is to be imposed simply have occurred "second or subsequent" to an earlier violation.

In *People v Roseburgh*, 215 Mich App 237; 545 NW2d 14 (1996), the defendant committed offense I and then offense II and was thereafter convicted of offense II, then offense I. The *Roseburgh* panel considered whether subsections 7413(2) and (5), MCL 333.7413(2) and (5); MSA 14.15(7413)(2) and (5),[3] of the controlled substances act applied "to enhance a defendant's sentence where the crime resulting in the second conviction occurred before the crime resulting in the first conviction," and held that, "[a]lthough the convictions must follow one another, the statute includes no temporal requirement regarding the sequence of the crimes, and in the absence of any authority to do so, we decline to add such a require-

---

[3] Subsections 2 and 5 provide in pertinent part:

(2) Except as otherwise provided in subsections [7413](1) and (3), an individual convicted of a second or subsequent offense under this article may be imprisoned for a term not more than twice the term otherwise authorized or fined an amount not more than twice that otherwise authorized, or both.

\* \* \*

(5) For purposes of subsection (2), an offense is considered a second or subsequent offense, if, before conviction of the offense, the offender has at any time, been convicted under this article . . . .

ment." *Id.* at 238-239. The *Roseburgh* panel's interpretation of subsections 7413(2) and (5) is neither binding on this panel nor is it persuasive. Indeed, the panel's reasoning is faulty because it nullifies a key phrase in both subsections, i.e., "second or subsequent offense." In *Roseburgh*, the panel upheld a term of life imprisonment where the offense (offense I) for which a life sentence was imposed occurred *before* any second or subsequent offense (offense II). Such an interpretation of the phrase "second or subsequent offense" begs the question: "second or subsequent" to what?

The factual situation in this case presents a different possible interpretation of the phrase "second or subsequent violation." Here, defendant committed offense I, then offense II, and was thereafter convicted of offense I, then offense II. Unlike the sequence of events in *Roseburgh*, the offense (offense II) for which defendant received a life sentence did occur "second or subsequent" to an earlier offense (offense I), but not "second or subsequent" to the previous conviction. To the extent that the language of subsection 7413(1) is susceptible of more than one interpretation, judicial construction in accordance with established rules of statutory construction is necessary to resolve the ambiguity.[4] *People v Morris*, 450 Mich 316, 325; 537 NW2d 842 (1995); *People v Nantelle*, 215 Mich App 77; 544 NW2d 667 (1996).

---

[4] The majority's wholehearted capitulation to the legislative branch is, if nothing else, interesting. The majority exalts legislative form over substance, yet fails to address the effect of the statutory phrase "second or subsequent violation," thereby implicitly conceding the error of their position. See *Gross v General Motors Corp*, 448 Mich 147, 159; 528 NW2d 707 (1995) (as far as possible, a court must give effect to every phrase, clause, and word of a statute).

The Supreme Court in *People v Reeves*, 448 Mich 1, 8; 528 NW2d 160 (1995), stated:

> In enacting statutes, the Legislature recognizes that courts will apply common-law rules to resolve matters that are not specifically addressed in the statutory provision. 2B Singer, Sutherland Statutory Construction (5th ed), § 50.01, p 90. "[W]ords and phrases that have acquired a unique meaning at common law are interpreted as having the same meaning when used in statutes dealing with the same subject" matter as that with which they were associated at the common law. *Pulver v Dundee Cement Co*, 445 Mich 68, 75; 515 NW2d 728 (1994); *People v Young*, 418 Mich 1, 13; 340 NW2d 805 (1983).

Where the Legislature "has shown no disposition to depart from the common-law definition, therefore it remains." *People v Schmitt*, 275 Mich 575, 577; 267 NW 741 (1936).

Michigan appellate courts have long followed the majority common-law rule that, for purposes of penalty enhancement under repeat offender statutes, it is a prerequisite that the prior conviction precede the commission of the principal offense. *People v Stoudemire*, 429 Mich 262, 283; 414 NW2d 693 (1987) (ARCHER, J., dissenting), cited with approval in *People v Preuss*, 436 Mich 714, 732; 461 NW2d 703 (1990). See also *People v Podsiad*, 295 Mich 541, 546-547; 295 NW 257 (1940); *People v Sawyer*, 410 Mich 531, 536; 302 NW2d 534 (1981); *People v Alexander*, 422 Mich 932 (1985); *People v Johnson*, 86 Mich App 77, 79-80; 272 NW2d 200 (1978); *People v Smith*, 90 Mich App 572, 574; 282 NW2d 399 (1979), vacated on other grounds 407 Mich 906 (1979); *People v Jones*, 171 Mich App 720, 726, n 5; 431 NW2d 204 (1988); *People v Erwin*, 212 Mich App 55, 60; 536 NW2d 818 (1995).

See, generally, anno: *Chronological or procedural sequence of former convictions as affecting enhancement of penalty under habitual offender statutes*, 7 ALR5th 263, § 2a, pp 289-293. For example, in *People v Sawyer, supra*, our Supreme Court construed the meaning of the phrase "prior conviction" in the second-offender provision of the felony-firearm statute.[5] In that case, the defendant committed a robbery while armed with a firearm on two separate occasions. The prosecution initiated separate trials for these two offenses, and the defendant ultimately pleaded guilty of two counts of felony-firearm at a single plea proceeding. The trial court considered the first offense as a prior conviction and imposed a five-year term of imprisonment rather than the two-year term for offenders without a prior conviction. Our Supreme Court held that, although a literal reading of the statute would lead to the conclusion that the defendant had a second conviction and technically was subject to the repeat-offender provisions of the statute, the Legislature did not intend such a result:

> There are a number of purposes served when the Legislature provides increased punishment for repeat offenders. These include deterrence and the proper desire of society to provide more severe punishment for a person who declines to change his or her ways following an opportunity to reform. These purposes are not served by imposing a more severe punishment on the day when a defendant first pleads guilty, and we accordingly believe that the Legislature intended a five-year term of imprisonment for a second conviction should only be imposed where the second offense is subsequent to the first conviction. [410 Mich 535-536.]

---

[5] See MCL 750.227b; MSA 28.424(2).

More recently, our Supreme Court placed a further gloss on *Sawyer* when it stated in *People v Stewart*, 441 Mich 89, 94-95; 490 NW2d 327 (1992):

> Our statement in *Sawyer* that "a five-year term of imprisonment for a second conviction should only be imposed where the second offense is subsequent to the first conviction," 410 Mich 536, should be understood to mean that a defendant may not be convicted as a repeat offender unless the prior conviction(s) precede the offense for which the defendant faces enhanced punishment. There is no requirement that all prior offenses be neatly separated by intervening convictions.

Given that the statutory phrase "second or subsequent violation" is susceptible of more than one interpretation, we are obligated to apply the established common-law rule. In a footnote, the panel in *Roseburgh*, *supra* at 239, n 1, refused to apply this rule by analogy beyond the habitual offender statutes because the "statutory language is sufficiently different to render those cases inapplicable to the issue presented here." While it is true that no previous Michigan case has applied this common-law rule to the second-offender provisions of the controlled substances act, the rule has been applied not only to the habitual offender statutes (*Stoudemire*, *supra; Preuss*, *supra; Johnson*, *supra; Jones*, *supra*), but also to the repeat-offender provisions of the felony-firearm statute (*Sawyer*, *supra; Stewart*, *supra*), and to the second-offender provisions of the drunk-driving statute (*Erwin*, *supra*). Certainly, the legislative intent in enacting such penalty-enhancing statutes is the same whether the conduct involved is general recidivism or recidivism of specific offenses, such as possession of a firearm during the commission of a

felony, or driving a motor vehicle while under the influence of liquor, or dealing in large amounts of illegal narcotics.

Here, defendant Poole committed two offenses one week apart and was convicted of those offenses in separate court proceedings approximately one year later. At the time defendant committed his second offense, however, he had not been convicted of his first offense. Thus, application of the common-law rule to the facts of this case furthers both the Legislature's intent in enacting the second-offender provisions of the controlled substances act and the underlying principle of the common-law rule. Accordingly, I would remand this matter to the trial court for resentencing.