# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

CARL SEARS,

Defendant-Appellant.

UNPUBLISHED
February 16, 2016

No. 324082
Wayne Circuit Court
LC No. 14-002959-FC

Before: SERVITTO, P.J., and SAAD and O'BRIEN, JJ.

PER CURIAM.

Defendant, Carl Sears, was convicted by a jury of assault with intent to commit murder, MCL 750.83, carrying a weapon with unlawful intent, MCL 750.226, felon in possession of a firearm, MCL 750.224f, and possession of a firearm during the commission of a felony, MCL 750.227b, and sentenced as a fourth-offense habitual offender, MCL 769.12, to concurrent prison terms of 25 to 40 years for the assault conviction, 4 to 10 years for the weapon conviction, and 4 to 10 years for the felon-in-possession conviction, each to be served consecutive to a two-year prison term for the felony-firearm conviction. He appeals as of right his October 2, 2014 judgment of sentence. We affirm.

## I. BACKGROUND

Defendant's convictions arise out of the nonfatal shooting of Derec Thomas on December 22, 2013. Defendant and Thomas drove from Battle Creek to Detroit at some point during the afternoon or early evening on the 22nd. According to Thomas, the purpose of the trip was for Thomas to sell a vehicle to defendant's cousin. Thomas testified that he picked up defendant at approximately 5:00 p.m. and drove to Detroit. Upon arriving in Detroit, Thomas testified, defendant directed him to park in a specific location in a poorly lit, dead-end subdivision and remain in the vehicle. Thomas testified that defendant exited the vehicle, joined two men standing near where Thomas parked the vehicle, and then returned toward the vehicle with the two men. As the group approached the car, Thomas explained, defendant and one of the other men displayed two handguns and shot Thomas several times. Thomas specifically recalled hearing defendant "say, pop him in the head a couple times and drag him back in the ditch right here" to the others as they approached the vehicle. Thomas "just floored it and took off" and was able to make it to a restaurant parking lot and call 911. Law enforcement arrived, and, realizing that defendant's "skin color was turning blue and purple and he was going in and out of

-1-

consciousness," the officers elected to take Thomas directly to the hospital. Thomas survived. However, he had several organs removed or partially removed, remained in the hospital for more than one month following the shooting, continued having to see a doctor "three to four visits a week" as of the date of trial (September 2014), and had several scars and a twitch as a result of the injuries he sustained during the shooting.

Defendant testified that the events on the 22nd went differently. According to him, Thomas contacted him on the 22nd in hopes of purchasing Oxycontin pills. After unsuccessfully attempting to purchase the same in Battle Creek, defendant contacted someone he knew as "Lindsey" in Detroit, and the two men left at "like 11:00 or 12:00" to purchase Oxycontin from Lindsey. Defendant denied that there was ever any discussion about selling the vehicle that they drove despite the fact that a license plate belonging to defendant was found in the backseat of the vehicle after the shooting. Once they arrived in Detroit, defendant testified, they were unable to contact Lindsey, so defendant approached strangers at a gas station in search of Oxycontin. Defendant testified that one individual directed them to a house nearby, which was why the two drove to the dead-end subdivision where the shooting eventually took place. According to defendant, he exited the vehicle, unsuccessfully knocked on the doors of two residences in pursuit of the drugs, and then was approached by two men in search of a cigarette. After telling the men that he did not have one, defendant continued, one of the men held a gun to his back and led him to the vehicle where they shot Thomas. Defendant denied having anything to do with the shooting. According to defendant, after Thomas was able to successfully drive away from the shooters, he ran away unscathed. Defendant testified that, after getting away, he asked a stranger to call 911 and report the shooting. He testified that he also called law enforcement either later that day, the following day, or both, but there was no record of that call. According to defendant, he described the details of the shooting to the dispatcher and was put on "hold, for, you know, a detective or something."

Based on this as well as other evidence presented by the prosecution, defendant was found guilty and sentenced as described above. This appeal followed.

II. ANALYSIS

A. SUFFICIENCY OF THE EVIDENCE

On appeal, defendant first argues that he was deprived of his constitutional right to due process because there was insufficient evidence to support his convictions. We disagree.

Due process requires that the prosecution in a criminal case introduce evidence sufficient to justify a trier of fact in concluding that defendant is guilty beyond a reasonable doubt. *People v Johnson*, 460 Mich 720, 722-723; 597 NW2d 73 (1999). On appeal, this Court is required to "view the evidence in the light most favorable to the prosecution" and determine "whether the evidence presented at trial, together with all reasonable inferences arising therefrom, was sufficient to allow a rational trier of fact to find each element of the crime proven beyond a reasonable doubt." *People v DeLisle*, 202 Mich App 658, 660; 509 NW2d 885 (1993). It is settled law that this Court " 'will not interfere with the trier of fact's role of determining the weight of the evidence or credibility of witnesses.' " *People v Eisen*, 296 Mich App 326, 331;

820 NW2d 229 (2012), quoting *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008).

Defendant does not dispute that the evidence presented by the prosecution was sufficient to establish the elements of the charged crimes. Instead, his position on appeal is that Thomas's testimony, specifically Thomas's testimony identifying defendant as the perpetrator of the charged crimes, was inherently incredible. Defendant points to the fact that Thomas was a difficult witness, the fact that Thomas admitted suffering memory loss as a result of his injuries, the fact that Thomas testified that he heard 12 gunshots at preliminary examination and only "quite a few" at trial, the fact that Thomas testified that he could see defendant "plain as day" despite the timing of the shooting, and the fact that Thomas recalled viewing satellite photos of the neighborhood where the shooting occurred despite the officer-in-charge's denial of the same. These are all aspects of credibility, and it is the role of the trier of fact, not this Court, to determine the weight of evidence and credibility of witnesses. *Eisen*, 296 Mich App at 331. Moreover, because we are required to view the evidence presented in a light most favorable to the prosecution, *DeLisle*, 202 Mich App at 660, defendant's conclusory claim that Thomas's testimony was incredible simply lacks merit. Thomas specifically testified that he saw defendant shoot him and heard defendant tell the other shooter to do the same. "The jury is free to believe or disbelieve, in whole or in part, any of the evidence presented at trial." *People v Unger*, 278 Mich App 210, 228; 749 NW2d 272 (2008) (citation and internal quotation marks omitted).

To the extent that defendant's argument might be understood as a claim that the jury's verdict was contrary to the great weight of the evidence rather than a claim challenging the legal sufficiency of the evidence, it is nevertheless meritless. Conflicting testimony does not warrant a new trial unless the testimony contradicts indisputable facts or laws, it is patently incredible or inherently implausible, or it was impeached so thoroughly that it was deprived of all probative value. See *People v Lemmon*, 456 Mich 625, 643-646; 576 NW2d 129 (1998). None of those are true in this case. Thomas's testimony that he could see defendant, an individual he had known for several months, "plain as day" despite the fact that it was 7:00 p.m. in December does not contradict indisputable facts or laws, is not patently incredible or inherently implausible, and was not impeached so thoroughly that it was deprived of all probative value. Likewise, Thomas's testimony that he was shot 12 or "quite a few" times does not contradict indisputable facts or laws, is not patently incredible or inherently implausible, and was not impeached so thoroughly that it was deprived of all probative value automatically because there were only two bullet casings found where the shooting occurred. The other credibility claims fail for the same reasons. Thus, we conclude that the prosecution presented sufficient credible evidence to support defendant's convictions beyond a reasonable doubt.

### B. CRUEL AND UNUSUAL PUNISHMENT

Defendant next argues that his sentence constitutes cruel and unusual punishment in light of his criminal history, his 11th-grade education, his limited drug and alcohol use, and his poor childhood. We disagree.

Defendant did not raise this issue before the trial court. Thus, it is unpreserved. *People v Costner*, 309 Mich App 220, 232; 870 NW2d 582 (2015). Unpreserved constitutional issues are reviewed for plain error affecting a defendant's substantial rights. *Id*. "Plain error affects a

defendant's substantial rights when it affects the outcome of the proceedings." *People v Ackah-Essien*, ___ Mich App ___, ___; ___ NW2d ___ (2015) (Docket No. 317411); slip op at 4, citing *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

> The United States Constitution prohibits cruel and unusual punishment. US Const, Am VIII. The Michigan Constitution prohibits cruel or unusual punishment, Const 1963, art 1, § 16, and "[i]f a punishment 'passes muster under the state constitution, then it necessarily passes muster under the federal constitution.' " *People v Benton*, 294 Mich App 191, 204; 817 NW2d 599 (2011), quoting *People v Nunez*, 242 Mich App 610, 618-619 n 2; 619 NW2d 916 (2007). [*Costner*, 309 Mich App at 232 (emphasis by *Benton* Court).]

"In determining whether a sentence is cruel or unusual we look to the gravity of the offense and the harshness of the penalty, comparing the penalty to those imposed for other crimes in this state as well as the penalty imposed for the same offense by other states and considering the goal of rehabilitation." *People v Poole*, 218 Mich App 702, 715; 555 NW2d 485 (1996).

In *People v Steanhouse*, ___ Mich App ___, ___; ___ NW2d ___ (2015) (Docket No. 318329); slip op at 24, this Court held "that a sentence that fulfills the principle of proportionality under [*People v Milbourn*, 435 Mich 630; 461 NW2d 1 (1990)] and its progeny constitutes a reasonable sentence under [*People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015)]." Under *Milbourn* and its progeny, a sentence falling within the minimum range specified by the advisory judicial guidelines was presumptively proportionate. *People v Kennebrew*, 220 Mich App 601, 609; 560 NW2d 354 (1996) ("As a general rule, a sentence that falls within the guidelines' range is presumed to be neither excessive nor disparate."); *People v Dukes*, 189 Mich App 262, 266; 471 NW2d 651 (1991) ("*Milbourn* left intact the Court's prior observation, in *People v Broden*, 428 Mich 343, 354; 408 NW2d 789 (1987), that sentences falling within the recommended guidelines range are presumptively not excessively severe or unfairly disparate."). Further, as noted in *People v Williams (After Remand)*, 198 Mich App 537, 543; 499 NW2d 404 (1993), citing *People v Bullock*, 440 Mich 15, 40-41; 485 NW2d 866 (1992), where "sentences are not disproportionate in relation to the crimes, they are therefore not cruel or unusual."

In this case, defendant acknowledges that his sentence is within the appropriate sentencing guidelines range and, therefore, presumptively proportionate. Further, defendant has failed to set forth a meritorious argument that would render the presumptively proportionate sentence disproportionate. See *People v Daniel*, 207 Mich App 47, 54; 523 NW2d 830 (1994) (concluding that the defendant had not cited "unusual circumstances that would overcome" the presumption of proportionality). He relies on his criminal record, which is obviously quite extensive in light of his fourth-offense habitual offender status at the time these crimes were committed—when he was 20 years old. He also points to his lack of education and drug and alcohol use. Finally, he points to the fact that his parents passed away when he was a young child. These aspects of defendant's life, alone, are simply insufficient to overcome the presumption of proportionality. Further, he ignores the gravity of the underlying offense in this case—he led Thomas, apparently a friend, into an ambush-style shooting that Thomas barely escaped alive. Defendant also fails to provide any argument or evidence demonstrating that his sentence is constitutionally deficient in in comparison to the penalties imposed for other crimes

in this state or for the same crimes in other states, *Poole*, 218 Mich App at 715, and this Court need not do so for him, *People v Kevorkian*, 248 Mich App 373, 389; 639 NW2d 291 (2001). Additionally, to the extent defendant emphasizes the fact that the cumulative length of his sentences is extended by his two-year sentence for his felony-firearm conviction, he fails to acknowledge that proportionality is measured by individual sentences, not the cumulative length of multiple sentences. *People v Miles*, 454 Mich 90, 95; 559 NW2d 299 (1997). Thus, we conclude that defendant has not overcome the presumption of proportionality.

## C. STANDARD 4 ARGUMENTS

Defendant also raises several constitutional issues in a pro se supplemental brief filed pursuant to Administrative Order No. 2004-6, Standard 4. We conclude that each lacks merit.

### 1. INEFFECTIVE ASSISTANCE OF COUNSEL

First, defendant argues that he was deprived of his constitutional right to the effective assistance of counsel because trial counsel failed to impeach the victim, Thomas, with prior felony convictions and dishonesty. We disagree.

Defendant did not raise this issue before the trial court. Thus, it is unpreserved. *People v Petri*, 279 Mich App 407, 410; 760 NW2d 882 (2008). "To obtain relief for the denial of the effective assistance of counsel, the defendant must show that counsel's performance fell short of [an] objective standard of reasonableness and that, but for counsel's deficient performance, there is a reasonable probability that the outcome of [the defendant's trial] would have been different." *People v Ackley*, 497 Mich 381, 389; 870 NW2d 858 (2015) (citation and internal quotation marks omitted; alterations by *Ackley* Court). Pursuant to MRE 609, a party may attack a witness's credibility with evidence that "the witness has been convicted of a crime" if (1) "the crime contained an element of dishonesty or false statement" or (2) "the crime contained an element of theft" as long as the theft crime is "punishable by imprisonment in excess of one year or death under the law under which the witness was convicted," and "the court determines that the evidence has significant probative value on the issue of credibility."

On appeal, defendant specifically claims that trial counsel's performance constituted ineffective assistance because he failed to investigate Thomas's criminal record. "Trial counsel is responsible for preparing, investigating, and presenting all substantial defenses." *People v Chapo*, 283 Mich App 360, 371; 770 NW2d 68 (2009). "A substantial defense is one that might have made a difference in the outcome of the trial." *Id*. (citation and internal quotation marks omitted). "Defense counsel's failure to present certain evidence will only constitute ineffective assistance of counsel if it deprived defendant of a substantial defense." *People v Dunigan*, 299 Mich App 579, 589; 831 NW2d 243 (2013).

Applying those rules to this case, we conclude that trial counsel's performance did not fall below an objective standard of reasonableness, and, even if it did, defendant has not demonstrated that there is a reasonable probability that the outcome would have been different but for that performance. The only information in the record regarding Thomas's criminal history is Thomas's testimony that he has never been convicted of a crime involving theft or dishonesty at preliminary examination. While it is true that trial counsel indicated that he was

-5-

unable to confirm that testimony because Thomas lived in Montana for a period of time, trial counsel was informed that he could determine the same through the Montana Attorney General's pubic website, and the record is void as to whether he searched for that information. The record is also void of any indication as to whether Thomas was ever convicted of a crime involving theft or dishonesty. Even on appeal, defendant makes no indication one way or the other, and it is his burden to establish the factual predicate for his claim. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999). Thus, we find no constitutional error requiring reversal.

## 2. CONFRONTATION CLAUSE

Defendant next argues that, because he was deprived of his constitutional right to confront the witnesses against him when the trial court permitted a police officer "to introduce the contents of [a second police officer's] report and unidentified phone records," he is entitled to a new trial. We disagree.

The Confrontation Clause, US Const, Am VI; Const 1963, art 1, § 20, "bars the admission of testimonial statements by a witness who does not appear at trial unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness." *People v Dendel (On Second Remand)*, 289 Mich App 445, 453; 797 NW2d 645 (2010), citing *Crawford v Washington*, 541 US 36, 53–54, 124 S Ct 1354, 158 L Ed 2d 177 (2004). The primary purpose behind the Confrontation Clause is to ensure the reliability of evidence presented against a defendant by subjecting it to cross-examination before the trier of fact. *People v Sammons*, 191 Mich App 351, 356; 478 NW2d 901 (1991).

On appeal, defendant takes issue with the testimony of a police officer, Officer Matt Fulks, regarding a portion of a police report completed by a second police officer, Officer Joshua Christian. Specifically, he takes issue with Fulks's testimony that Christian's police report included a phone number that Thomas identified as defendant's phone number. Thomas testified that he identified defendant's phone number to Officer Christian at trial. A third officer, Officer Antonio Carlisi, testified that he obtained phone records associated with that phone number. According to defendant, without the testimony of Officer Christian, the phone records remained "unidentified." Therefore, he concludes, the admission of this testimony and the phone records violated his confrontation rights and requires a new trial. Assuming that the testimony and phone records at issue constituted testimonial hearsay in violation of defendant's confrontation rights, which is arguable at best, see, e.g., *People v Chambers*, 277 Mich App 1, 10-11; 742 NW2d 610 (2007), we nevertheless conclude that any error was harmless in light of the amount of otherwise damning evidence against defendant. Defendant's reliance on *People v Lonsby*, 268 Mich App 375, 396; 707 NW2d 610 (2005), is misplaced because that case involved the admission of serology lab reports in a mere credibility contest where "the prosecutor relied very heavily on this evidence to persuade the jury to convict defendant." Those circumstances are simply not present here. Furthermore, defendant never sought to call Officer Christian as a witness at trial. While it is true that he took issue with the admission of this testimony and the phone records, it is also true that "the right to confrontation is not violated by the prosecution failing to call witnesses that defendant could have called to testify." *People v Cooper*, 236 Mich App 643, 659; 601 NW2d 409 (1999). Thus, we discern no constitutional error requiring reversal.

## 3. PROSECUTORIAL MISCONDUCT

Finally, defendant argues that he was deprived of his constitutional right to a fair trial based on prosecutorial misconduct. We disagree.

Issues of prosecutorial misconduct are reviewed on a case-by-case basis, examining the allegedly improper remark in context, to determine whether the defendant was deprived of his constitutional right to a fair trial. *People v Dobek*, 274 Mich App 58, 63-64; 732 NW2d 546 (2007). Prosecutors are permitted to argue that a witness's testimony should or should not be believed, *People v Seals*, 285 Mich App 1, 22; 776 NW2d 314 (2009), and "are typically afforded great latitude regarding their arguments and conduct at trial," *Unger*, 278 Mich App at 236. "Although a prosecutor may not argue facts not in evidence or mischaracterize the evidence presented, the prosecutor may argue reasonable inferences from the evidence." *People v Watson*, 245 Mich App 572, 588; 629 NW2d 411 (2001).

In this case, respondent takes issue with the prosecutor's argument that the jury should believe Thomas was telling the truth because he made "a dying declaration" identifying defendant.[1] Assuming that this remark was improper, defendant is nevertheless not entitled to relief. After the parties' closing statements, the trial court instructed the jury that the attorneys' statements were not evidence, that it should only consider the admissible evidence in deciding the case, that it was to determine the credibility of the witnesses, and that it should use the law that the trial court, not the attorneys, provided. "Jurors are presumed to follow their instructions, and instructions are presumed to cure most errors." *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003). There is nothing in the record to suggest that they did not do so in this case. While defendant claims that these instructions were insufficient to remedy the harm of this remark, the record does not support that assertion. Thus, we again find no constitutional error requiring reversal.

## III. CONCLUSION

Accordingly, we conclude that there was sufficient evidence to support defendant's convictions, that defendant's sentence does not constitute cruel and unusual punishment, that defendant's trial counsel's performance did not constitute ineffective assistance, that the testimony regarding defendant's phone number did not amount to a constitutional error requiring

---

[1] Notably, defendant's argument on appeal is that the prosecutor's remark involved facts not in evidence, i.e., that Thomas was dying when he identified defendant as the perpetrator of the crimes at issue. The record belies this assertion. After being shot several times with a handgun from "within arms reach," Thomas identified defendant as one of the shooters. This was despite the fact that, as one officer testified, "[h]is skin color was turning blue and purple and he was going in and out of consciousness." These were facts in evidence. Nevertheless, keeping in mind that we are to construe pro se briefs liberally, See *Haines v Kerner*, 404 US 519, 520; 92 S Ct 594; 30 L Ed 2d 652 (1972), we address the prosecutor's remark assuming that it was improper.

reversal, and that the alleged prosecutorial misconduct did not amount to a constitutional error requiring reversal as well.  We therefore affirm defendant's conviction and sentence.

Affirmed.


/s/ Deborah A. Servitto
/s/ Henry William Saad
/s/ Colleen A. O'Brien