# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

SHERMAN LAMONT WAGNER,

      Defendant-Appellant.

UNPUBLISHED
December 15, 2015

No. 322058
Wayne Circuit Court
LC No. 13-000131-FC

Before: JANSEN, P.J., and CAVANAGH and GLEICHER, JJ.

PER CURIAM.

A jury convicted defendant of assault with intent to commit murder, MCL 750.83, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b, for shooting Yamani Moultrie outside a Detroit bar. The trial court sentenced defendant to a 15-to-30-year term of imprisonment for his assault conviction and a consecutive two-year term for the felony-firearm offense.

Defendant contends that the prosecution presented insufficient evidence to support his convictions and permitted the victim's false testimony to go uncorrected at trial. He challenges the performance of his appointed trial attorney. Defendant further contends that his within-guideline sentences amount to cruel and unusual punishment. Those challenges all lack merit and we affirm defendant's convictions.

However, defendant has established that he is entitled to a remand pursuant to *People v Lockridge*, 498 Mich 358; ___NW2d ___ (2015), and *United States v Crosby*, 397 F3d 103, 117-118 (CA 2, 2005), to determine whether resentencing is required as the court imposed sentence based on several judicially determined facts.

## I. BACKGROUND

Defendant and Moultrie were roommates. Moultrie allegedly sold $900 worth of oxycodone to defendant's friend, "AD." AD unwisely left his purchase at the house while he and defendant went out. Moultrie repossessed the drugs and sold them to someone else, but retained AD's funds. Defendant and AD tried to reclaim the drugs or the money, but Moultrie avoided them for several days. Defendant and AD eventually encountered Moultrie at a Detroit bar. The victim attempted to return AD's money, but defendant was unwilling to accept it. Instead, defendant instructed Moultrie to follow him outside. When Moultrie exited the bar,

-1-

defendant began shooting at him. As Moultrie attempted to escape, he was hit by four bullets and fell to the ground. He later identified defendant as his shooter.

## II. SUFFICIENCY OF THE EVIDENCE

Defendant first contends that the prosecution presented insufficient evidence to prove his identity as the shooter. We review de novo challenges to the sufficiency of the evidence, viewing the evidence "in the light most favorable to the prosecution" to determine whether a rational trier of fact "could have found that the essential elements of the crime were proven beyond a reasonable doubt." *People v Odom*, 276 Mich App 407, 418; 740 NW2d 557 (2007). Our review is deferential to the jury's verdict. We will not interfere with the jury's role of determining the weight of the evidence or assessing the witnesses' credibility. *Id.* at 419. "Conflicts in the evidence must be resolved in favor of the prosecution," and "[c]ircumstantial evidence and reasonable inferences arising therefrom may constitute proof of the elements of the crime." *People v Bennett*, 290 Mich App 465, 472; 802 NW2d 627 (2010).

Identity is an essential element in every criminal prosecution. *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008). "[P]ositive identification by witnesses may be sufficient to support a conviction. . . ." *People v Davis*, 241 Mich App 697, 700; 617 NW2d 381 (2000). The credibility of that identification testimony "is a question for the trier of fact that we do not resolve anew." *Id.*

Eyewitness testimony linked defendant to the crime. Moultrie testified that he was well acquainted with defendant as they were roommates. Moultrie indicated that defendant and AD came into the bar on the night in question and defendant ordered him outside. Once outside, someone started shooting at him, and Moultrie positively identified his shooter as defendant, not AD. The prosecution also presented the testimony of Jeffrey Smith, Moultrie's friend who was at the bar. Smith asserted that he saw Moultrie leave the bar with defendant, heard gunshots, and ran outside where he found Moultrie lying on the ground. Smith recounted that Moultrie had identified defendant as his shooter.

Defendant attempted to impeach Moultrie's identification testimony. On cross-examination, defense counsel emphasized that Moultrie testified on direct that he was unaware that defendant was armed until he began shooting. In the victim's statement to the police, however, he indicated that he noticed that defendant possessed a handgun while they were still inside the bar. Defense counsel further highlighted that Moultrie told the police he immediately ran away from defendant, while at trial, he claimed that he and defendant "tussled" over the gun.

Defendant asks this Court to overrule the jury's assessment of Moultrie's credibility, a request that we may not honor. The jury accepted Moultrie's identification of defendant as his shooter, and that evidence standing alone sufficed to support defendant's conviction.

## III. PRESENTATION OF FALSE TESTIMONY

In a brief filed in propria persona pursuant to Supreme Court Administrative Order 2004-6, Standard 4, defendant argues that the prosecution violated his right to due process by knowingly using false testimony to obtain his conviction. Specifically, defendant argues that Moultrie falsely testified that defendant shot him in the heart. The bullets actually struck

Moultrie in the upper chest, but the prosecution did not correct this misstatement. Defendant failed to preserve his challenge by raising an objection in the trial court. *People v Dupree*, 486 Mich 693, 703; 788 NW2d 399 (2010). Our review is therefore limited to plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

The state violates a defendant's due process rights when it secures a conviction "through the knowing use of perjured testimony." *People v Aceval*, 282 Mich App 379, 389; 764 NW2d 285 (2009). A prosecutor has a constitutional obligation to report whenever a government witness lies under oath, *People v Lester*, 232 Mich App 262, 276; 591 NW2d 267 (1998), and a duty to correct false evidence, *People v Gratsch*, 299 Mich App 604, 619-620; 831 NW2d 462 (2013), vacated in part on other grounds 495 Mich 876 (2013). "Failure to correct false testimony requires reversal if the false testimony could in any reasonable likelihood have affected the judgment of the jury." *People v Canter*, 197 Mich App 550, 568; 496 NW2d 336 (1992). "Stated differently, a conviction will be reversed and a new trial will be ordered, but only if the tainted evidence is material to the defendant's guilt or punishment." *Aceval*, 282 Mich App at 389.

On direct examination, Moultrie testified, "I was shot four times. . . . It pierced my heart and everything else." Moultrie's medical records were presented into evidence. Those records revealed that Moultrie had gunshot wounds "to the left thigh and left upper chest" and described a "wound to posterior left chest with active bleeding." There was no indication in the medical records that Moultrie had been shot in the heart.

Assuming that Moultrie's statement was false and the prosecutor was aware of its falsity, we discern no plain error requiring reversal or a new trial. The jury had the opportunity to review the medical records, which revealed no gunshot wound to Moultrie's heart. The prosecutor never focused on Moultrie's possibly exaggerated testimony or argued that defendant shot Moultrie in the heart. Rather, the prosecutor relied on the medical records when describing the gunshot wounds during closing argument. Evidence that defendant's bullets struck Moultrie four times in the thigh and upper chest adequately substantiated that defendant harbored the intent to kill. Accordingly, Moultrie's allegedly false statement on the stand did not result in the conviction of an innocent defendant. *Carines*, 460 Mich at 763.

## IV. ASSISTANCE OF COUNSEL

Defendant also raises in pro per challenges to the performance of his appointed trial counsel. Defendant contends that counsel should have presented Adam Thomas, the individual known as "AD," as a witness as trial. Defendant also contends that counsel should have impeached Moultrie's credibility with evidence of his prior criminal record.

Defendant failed to preserve his challenges by requesting a new trial or a *Ginther*[1] hearing, and our review is limited to mistakes apparent on the existing record. *People v Rodgers*, 248 Mich App 702, 713-714; 645 NW2d 294 (2001).

> " '[T]he right to counsel is the right to the effective assistance of counsel.' " *United States v Cronic*, 466 US 648, 654; 104 S Ct 2039; 80 L Ed 2d 657 (1984), quoting *McMann v Richardson*, 397 US 759, 771 n 14; 90 S Ct 1441; 25 L Ed 2d 763 (1970). An ineffective assistance claim includes two components: "First, the defendant must show that counsel's performance was deficient. . . . Second, the defendant must show that the deficient performance prejudiced the defense." *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984). To establish the deficiency component, a defendant must show that counsel's performance fell below "an objective standard of reasonableness" under "prevailing professional norms." *People v Solmonson*, 261 Mich App 657, 663; 683 NW2d 761 (2004). With respect to the prejudice aspect, the defendant must demonstrate a reasonable probability that but for counsel's errors, the result of the proceedings would have been different. *Id.* at 663-664. The defendant also must overcome the strong presumptions that "counsel's conduct [fell] within the wide range of reasonable professional assistance" and that counsel's actions were sound trial strategy. *Strickland*, 466 US at 689. [*People v Galloway*, 307 Mich App 151, 157-158; 858 NW2d 520 (2014), rev'd in part on other grounds ___ Mich ___ (Docket No. 150454, entered October 28, 2015).]

Defendant has not met his burden of establishing counsel's ineffectiveness in failing to present Thomas as a witness. Decisions regarding whether to call or question witnesses are presumed to be matters of trial strategy. *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887, 890 (1999). There is no "unconditional obligation to call or interview every possible witness suggested by a defendant." *People v Beard*, 459 Mich 918, 919; 589 NW2d 774 (1998). "[T]he failure to call witnesses only constitutes ineffective assistance of counsel if it deprives the defendant of a substantial defense," *People v Dixon*, 263 Mich App 393, 398; 688 NW2d 308 (2004), i.e. "one that might have made a difference in the outcome of the trial," *People v Kelly*, 186 Mich App 524, 526; 465 NW2d 569 (1990). "A failed strategy does not constitute deficient performance." *People v Petri*, 279 Mich App 407, 412; 760 NW2d 882 (2008).

Defendant wrote a letter to the trial court asserting that Thomas would have testified on his behalf. According to defendant, Thomas would have testified that Moultrie "had a gun and chased us that night." With his Standard 4 brief, defendant presented for the first time a statement signed by Thomas describing the testimony he would have provided at defendant's trial. Thomas described that Moultrie invited them to the bar on the night in question so he could return Thomas's money. When defendant and Thomas arrived, however, Moultrie "was drunk and acting crazy" and accused the men of coming to the bar "to fight" him. Thomas stated that Moultrie incited his friends to surround and threaten him and defendant. At that point, Thomas

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

-4-

and defendant fled the bar with Moultrie in pursuit. Thomas saw Moultrie holding a handgun. Moultrie and defendant wrestled for the gun and the weapon fired in the process. Thomas only realized that Moultrie rather than defendant was shot when defendant jumped into his car to escape.

Based on the existing record, defendant has not overcome the presumption that counsel employed sound trial strategy at the time he elected not to present Thomas as a witness. In his letter to the trial court, defendant indicated that the defense had originally included Thomas on his witness list. However, defendant admitted that he was facing charges related to a separate offense and that Thomas was scheduled to testify against him in that matter. Defense counsel could have reasonably decided against opening the door to cross-examination that likely would have inculpated defendant in the case awaiting trial. Accordingly, we cannot proclaim as requested by defendant that counsel should have presented Thomas and pursued a self-defense theory, rather than focusing on the inconsistencies in Moultrie's testimony to challenge the credibility of his identification of defendant as his shooter.

We also discern no prejudicial error in counsel's failure to impeach Moultrie with his prior criminal history. MRE 609 governs impeachment of a witness by evidence of conviction of a crime. The rule does not provide for wholesale admissibility of any past criminal conviction. Rather, only criminal convictions involving an element of dishonesty or false statement, or involving theft punishable by more than one year's imprisonment are potentially admissible under the rule. MRE 609(a)(1)-(2).

Defendant contends that Moultrie has a past conviction for a theft offense, which could have been used against him at trial. Although defense counsel did not present evidence of this conviction, there was ample evidence that Moultrie did not have a clean record. Moultrie admitted on the stand that he was a drug dealer and had wrongfully taken $900 from AD for drugs that he then resold to another. On cross-examination, defense counsel elicited significant testimony regarding additional drug sales involving Moultrie. Defense counsel also elicited testimony that Moultrie had been "incarcerated for three months." Given the evidence that was placed on the record, we cannot determine that presentation of an additional theft offense would have impacted the outcome of the trial.

## V. SENTENCING

Defendant raises several challenges to the sentences imposed against him after trial. Defendant contends that the sentences amount to cruel and unusual punishment. He argues that the scoring of various offense variables (OVs) based on judicially found facts was unconstitutional, and that counsel was ineffective in failing to object to the scoring of OV 6 at the sentencing hearing.

## A. CRUEL AND UNUSUAL PUNISHMENT

Defendant contends that his within-guideline sentence for his assault conviction, which is to be served consecutive to his felony-firearm sentence, is disproportionate, cruel and unusual punishment given his disadvantaged and difficult upbringing, young age, and minimal prior criminal history. Defendant failed to preserve this challenge by raising it in the trial court.

*People v Bowling*, 299 Mich App 552, 557; 830 NW2d 800 (2013). Accordingly, our review of this constitutional issue is limited to plain error affecting defendant's substantial rights. *Carines*, 460 Mich at 763.

US Const, Am VIII provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." The Michigan Constitution similarly provides, "cruel or unusual punishment shall not be inflicted . . . ." Const 1963, art 1, § 16. "In determining whether a sentence is cruel or unusual [this Court] look[s] to the gravity of the offense and the harshness of the penalty, comparing the penalty to those imposed for other crimes in this state as well as the penalty imposed for the same offense by other states and considering the goal of rehabilitation." *People v Poole*, 218 Mich App 702, 715; 555 NW2d 485 (1996). Sentences that are proportionate to the seriousness of the offense and the offender are not cruel and unusual punishment. *People v Drohan*, 264 Mich App 77, 92; 689 NW2d 750 (2004); *People v Colon*, 250 Mich App 59, 66; 644 NW2d 790 (2002). And a sentence within the guidelines range, like defendant's sentences, is presumptively proportionate. *People v Broden*, 428 Mich 343, 354-355; 408 NW2d 789 (1987); *People v Powell*, 278 Mich App 318, 323; 750 NW2d 607 (2008). "In order to overcome the presumption that the sentence is proportionate, a defendant must present unusual circumstances that would render the presumptively proportionate sentence disproportionate." *Bowling*, 299 Mich App at 558; *People v Lee*, 243 Mich App 163, 187; 622 NW2d 71 (2000).

Defendant's disadvantaged upbringing, young age, and limited criminal history do not amount to unusual circumstances that render his presumptively proportionate sentence disproportionate. A court is not required to consider a defendant's age in determining whether a sentence is disproportionate. *People v Lemons*, 454 Mich 234, 258-259; 562 NW2d 447 (1997). "Furthermore, defendant's age is insufficient to overcome the presumptive proportionality of his sentences." *Bowling*, 299 Mich App at 558. Defendant cites no caselaw to support that his disadvantaged and difficult upbringing are unusual circumstances requiring mitigation of his sentence. In fact, this Court has held that a defendant's "trauma of attending seven or ten different schools, and [growing] up in an economically deprived environment" were not reasons for departing from the mandatory minimum. *People v Williams*, 189 Mich App 400, 401-402; 473 NW2d 727 (1991). A defendant's criminal history, or lack thereof, is taken into account when scoring a defendant's prior record variables. Accordingly, the lack of a criminal history cannot be deemed an unusual circumstance that renders a within-guideline sentence cruel or unusual. We also reject defendant's contention that imposing consecutive sentences is cruel and unusual. See *People v Miles*, 454 Mich 90, 95; 559 NW2d 299 (1997) (finding that the "sentencing court did not have to consider [the] length of consecutive or concurrent mandatory sentence[s] when setting [an] indeterminate sentence"); *People v Ryan*, 295 Mich App 388, 401; 819 NW2d 55 (2012) (finding that "where a defendant receives consecutive sentences and neither sentence exceeds the maximum punishment allowed, the aggregate of the sentences will not be disproportionate"). Moreover, defendant made no attempt to establish that his penalty is out of proportion to the statutory sentences for other offenses in this state or similar offenses around the nation.

B. OV 6

Defendant contends that defense counsel was ineffective by failing to object to the trial court's decision to score OV 6 at 50 points.[2] To establish that counsel was ineffective, defendant must show that the guidelines were improperly scored and that he would have been placed in a lower minimum sentence range had defense counsel objected to the scoring. *People v Wilson*, 252 Mich App 390, 394-397; 652 NW2d 488 (2002).

Where a defendant is convicted of assault with intent to commit murder, as in this case, the sentencing court must score OV 6 when calculating his sentencing guidelines range. MCL 777.22(1). MCL 777.36 governs the scoring of OV 6 as follows:

(1) [OV] 6 is the offender's intent to kill or injure another individual. Score [OV] 6 by determining which of the following apply and by assigning the number of points attributable to the one that has the highest number of points:

(a) the offender had a premeditated intent to kill . . . ...................50 points

(b) the offender had [an] unpremeditated intent to kill, the intent to do great bodily harm, or created a very high risk of death or great bodily harm knowing that death or great bodily harm was the probable result ............25 points

(c) the offender had intent to injure or the killing was committed in an extreme emotional state caused by an adequate provocation and before a reasonable amount of time elapsed for the offender to calm or there was gross negligence amounting to an unreasonable disregard for life ...................10 points

(d) the offender had no intent to kill or injure ................................0 points

(2) All of the following apply to scoring offense variable 6.

(a) The sentencing judge shall score this variable consistent with a jury verdict unless the judge has information that was not presented to the jury.

(b) Score 10 points if a killing is intentional within the definition of second degree murder or voluntary manslaughter, but the death occurred in a combative situation or in response to victimization of the offender by the decedent.

The jury convicted defendant of assault with intent to commit murder and pursuant to MCL 777.36(2)(a), the court was required to score OV 6 consistent with that verdict. To support

---

[2] Defendant cursorily states in his Standard 4 brief that counsel also should have objected to the scoring of OV 8 and OV 12. However, the Court amended the scoring sheet prepared by the Department of Corrections and declined to score those variables.

the 50-point score imposed by the court, the court had to find that defendant "had a premeditated intent to kill." MCL 777.36(1)(a). Premeditation requires "sufficient time to permit the defendant to take a second look" and like other mental states, may be inferred from the surrounding circumstances. *People v Coy*, 243 Mich App 283, 315; 620 NW2d 888 (2000).

However, premeditation is not an element of an assault with intent to murder charge. To convict a defendant of that offense, the prosecution need only prove that the defendant committed "(1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder." *People v Brown*, 267 Mich App 141, 147-148; 703 NW2d 230 (2005) (quotation marks and citations omitted). The prosecution need not establish premeditation in every case; killing with premeditation is one form of first-degree murder, but not the only method by which murder is committed. Accordingly, the jury did not necessarily determine that defendant "had a premeditated intent to kill" and in scoring OV 6 at 50 points, the court had to find that fact of its own volition.

Although defendant challenges counsel's failure to object to the scoring of this variable based on the adequacy of the evidence, we find further review of this score by the trial court in order. As discussed in the next section, where a sentence is calculated under the sentencing guidelines based on judicially found facts, remand is necessary to determine if a defendant is entitled to resentencing.

## C. REMAND FOR *CROSBY* ANALYSIS

Finally, defendant contends that he is entitled to resentencing under *Alleyne v United States*, 570 US __, 133 S Ct 2151; 186 L Ed 2d 314 (2013), because the trial court relied on facts not admitted by defendant or found by the jury to score the OVs of the sentencing guidelines.

Because defendant failed to object to the scoring of his OVs at sentencing based on *Apprendi v New Jersey*, 530 US 466, 477; 120 S Ct 2348; 147 L Ed 2d 435 (2000), or *Alleyne*, review is limited to plain error affecting defendant's substantial rights. *Lockridge*, 498 Mich at 392-393.

> Recently, our Supreme Court relied on *Alleyne* in holding that Michigan's sentencing scheme, which permits judicial fact-finding in scoring the offense and prior record variables, violates the Sixth Amendment. *Lockridge*, [498 Mich at 364-365]. The Michigan Supreme Court remedied that defect by rendering Michigan's sentencing guidelines advisory, just as the United States Supreme Court had done with regard to the federal sentencing guidelines in *United States v Booker*, 543 US 220, 233; 125 S Ct 738; 160 L Ed 2d 621 (2005). *Lockridge*, [498 Mich at 365].

> Although Michigan's sentencing guidelines are "constitutionally deficient," our Supreme Court decreed in *Lockridge* that trial courts must still score the offense and prior record variables and assess the "highest number of points possible" for each one. *Lockridge*, [498 Mich at 392 n 28]. A sentencing court is obligated to "consult the applicable guidelines range and take it into

account when imposing a sentence." *Id*. at [392]. [*People v Masroor*, ___ Mich App ___; ___ NW2d ___ (Docket No. 322280, issued _____), slip op at 6.]

In *People v Stokes*, ___ Mich App ___; ___ NW2d ___ (Docket No. 321303, issued September 8, 2015), slip op at 8-9, this Court distilled the procedure set forth in *Lockridge* for trial courts to reconsider sentences when faced with an unpreserved challenge:

> Noting that "virtually all" of these cases involve unpreserved challenges, our Supreme Court described a procedure, the goal of which is to determine whether a *Lockridge* error resulted in prejudice to any given defendant. Such an inquiry is necessary because unpreserved constitutional errors are subject to plain-error review, which requires a defendant to demonstrate not only that an error occurred, but that "the error affected the outcome of the lower court proceedings." Our Supreme Court held that if a defendant is able to "establish a threshold showing of the potential for plain error," the case must "be remanded to the trial court to determine whether that court would have imposed a materially different sentence but for the constitutional error. If the trial court determines that the answer to that question is yes, the court shall order resentencing." The precise procedure to be followed, modeled on that adopted in *United States v Crosby*, [397 F3d 103 (CA 2, 2005),] is as follows:
>
> > [O]n a *Crosby* remand, a trial court should first allow a defendant an opportunity to inform the court that he or she will not seek resentencing. If notification is not received in a timely manner, the court (1) should obtain the views of counsel in some form, (2) may but is not required to hold a hearing on the matter, and (3) need not have the defendant present when it decides whether to resentence the defendant, but (4) must have the defendant present, as required by [MCR 6.425], if it decides to resentence the defendant. Further, in determining whether the court would have imposed a materially different sentence but for the unconstitutional constraint, the court should consider only the circumstances existing at the time of the original sentence. [Citations omitted.]

In calculating defendant's total OV score of 105, the court relied on factors that were not elements of the charged offense and were therefore not decided by the jury. As noted, the court found that defendant acted with premeditated intent and scored 50 points for OV 6. The court also determined that Moultrie sustained "life threatening or permanent incapacitating injury" and thereby scored 25 points for OV 3. Actual injury is not an element of defendant's assault conviction. *People v Harrington*, 194 Mich App 424, 430; 487 NW2d 479 (1992).[3] Absent these scores (or even just the score for OV 6), defendant would have fallen into a lower cell on the sentencing grid and his recommended minimum sentence would have been lower.

---

[3] Defendant contends that the court improperly assessed points for OV 8 and OV 12 based on judicially found facts. However, the court reduced the scores for those variables to zero at the sentencing hearing.

Accordingly, we must remand this case "to the trial court to determine whether that court would have imposed a materially different sentence but for the constitutional error. If the trial court determines that the answer to that question is yes, the court shall order resentencing." *Stokes*, slip op at 9.

We affirm defendant's convictions but remand to determine if resentencing is required. We do not retain jurisdiction.

/s/ Kathleen Jansen
/s/ Mark J. Cavanagh
/s/ Elizabeth L. Gleicher