# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee

v

DARYL DUDE NELSON,

       Defendant-Appellant.

UNPUBLISHED
January 12, 2016

No. 323685
Wayne Circuit Court
LC No. 14-003572-FC

Before: SAAD, P.J., and WILDER and MURRAY, JJ.

PER CURIAM.

Defendant was convicted, following a jury trial, of second-degree murder, MCL 750.317, and reckless driving causing death, MCL 257.626(4). He was sentenced, as a third habitual offender, MCL 769.11, to concurrent terms of 12 to 24 years' imprisonment for reckless driving causing death, and 25 to 50 years' imprisonment for second-degree murder. Defendant now appeals by right. We affirm.

Defendant first argues that the prosecution failed to present legally sufficient evidence to prove that he had the requisite state of mind for either second-degree murder or reckless driving causing death. A court must review a challenge to the sufficiency of the evidence de novo and in a light most favorable to the prosecution to determine whether the trial court could have found that the essential elements of the crime were proved beyond a reasonable doubt. *People v Sherman-Huffman*, 241 Mich App 264, 265; 615 NW2d 776 (2000), aff'd 466 Mich 39 (2002). "The standard of review is deferential: a reviewing court is required to draw all reasonable inferences and make credibility choices in support of the . . . verdict." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000).

In a criminal case, due process requires that a prosecutor introduce evidence sufficient for the trier of fact to conclude that the defendant is guilty beyond a reasonable doubt. *People v Harverson*, 291 Mich App 171, 175; 804 NW2d 757 (2010), citing *People v Johnson*, 460 Mich 720, 723; 597 NW2d 73 (1999). A prosecutor need not negate every reasonable theory of innocence, but must only prove his own theory beyond a reasonable doubt in the face of whatever contradictory evidence the defendant provides. *Nowack*, 462 Mich at 400; *People v Chapo*, 283 Mich App 360, 363-364; 770 NW2d 68 (2009). Questions of credibility should be left to the trier of fact to resolve. *People v Harrison*, 283 Mich App 374, 378; 768 NW2d 98 (2009); *People v Unger*, 278 Mich App 210, 229; 749 NW2d 272 (2008). All conflicts in the

-1-

evidence must be resolved in favor of the prosecution. *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008).

"In order to convict a defendant of second-degree murder, the prosecution must prove: (1) a death, (2) caused by an act of the defendant, (3) with malice, and (4) without justification or excuse." *People v Roper*, 286 Mich App 77, 84; 777 NW2d 483 (2009) (citation and quotation marks omitted). Defendant challenges only the third element, malice. "Malice is defined as the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and willful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm." *Id*. (citation omitted). Thus, the offense of second-degree murder does not require an actual intent to harm or kill, but only the intent to do an act that is in obvious disregard of life-endangering consequences. *People v Goecke*, 457 Mich 442, 466; 579 NW2d 868 (1998). Moreover, malice can be inferred from evidence that a defendant "intentionally set in motion a force likely to cause death or great bodily harm." *People v Djordjevic*, 230 Mich App 459, 462; 584 NW2d 610 (1998).

The evidence at trial indicated that defendant was driving a car at a high rate of speed while repeatedly, aggressively, and intentionally hitting the side of the victim's van. Although defendant argues that the victim was *also* driving in an irresponsible and dangerous manner, he does not refute that he was driving as the witnesses described. Similarly, there was no testimony indicating that defendant attempted to stop ramming the victim's vehicle or slow down before the collision. At trial there was also evidence that suggested defendant intended to act aggressively towards the victim. The victim's sister testified that on the day before the crash defendant had shown up at her home unannounced when the victim was there and had "kept texting [the victim]" while she was out that day. The victim's cousin testified that defendant had previously shown up unannounced at a family member's home while the victim was there and had attempted to prevent her from leaving. She testified that defendant had parked his car right behind the victim's car and didn't leave even after she asked him to. The victim's cousin also testified that defendant had acted in that manner before.

Viewed in a light most favorable to the prosecution, the evidence was sufficient to enable the jury to find beyond a reasonable doubt that defendant drove at dangerously excessive speeds while repeatedly, aggressively, and intentionally hitting the side of the victim's van, before eventually causing the victim to run off of the road, lose control, and crash into a cement wall. The jury could conclude that the evidence demonstrated that defendant was acting with a wanton and willful disregard of the likelihood that the natural tendency of his conduct would cause death or great bodily harm to the victim. See *People v Aldrich*, 246 Mich App 101, 123-124; 631 NW2d 67 (2001) and *People v Mayhew*, 236 Mich App 112, 125-126; 600 NW2d 370 (1999). Accordingly, the evidence was sufficient to establish the requisite malice to support defendant's conviction of second-degree murder.

A conviction for reckless driving causing death requires proof beyond a reasonable doubt that 1) the defendant operated a vehicle "upon a highway . . . or other place open to the general public," 2) the operation was "in willful or wanton disregard for the safety of persons or property," and 3) the defendant's operation of the vehicle "causes the death of another person." MCL 257.626(4). Willful or wanton disregard means more than simple carelessness but does not require proof of an intent to cause harm. *People v Crawford*, 187 Mich App 344, 349-350; 467

NW2d 818 (1991). It means knowingly disregarding the possible risks to the safety of people or property. *Id*.

Defendant does not dispute that he was driving a vehicle on a highway or place open to the public and he does not dispute that the victim died as a result of the accident. Additionally, defense counsel referred to defendant's driving as "immature driving, careless, negligent driving" several times during trial. Therefore, the only issue before this Court is whether the prosecutor presented sufficient evidence to show that defendant's actions were in willful or wanton disregard for the safety of persons and actually caused the victim's death.

This is not a case in which defendant was merely speeding when the collision occurred. His driving behavior was so obviously dangerous that other motorists traveling in his vicinity slowed down to avoid his car even before the collision occurred. Contrary to defendant's assertions, the fact that the victim was also driving recklessly does not mean that defendant was not. Thus, the evidence was sufficient for a jury to find that defendant's actions were in willful or wanton disregard for the safety of persons. See *People v Smith*, 488 Mich 193, 195; 793 NW2d 666 (2010) (where the defendant drove recklessly when he drove at a high rate of speed and pulled into a lane of oncoming traffic) and *People v Miller*, 198 Mich App 494, 496-498; 499 NW2d 373 (1993) (finding that speeding down a road, straddling lanes, and running red lights constituted reckless driving).

Contrary to defendant's assertions, the fact that the victim was also driving recklessly does not mean that defendant was not a cause of the crash. Our Supreme Court has held that there may be more than one proximate cause of an injury. See, e.g., *People v Bailey*, 451 Mich 657, 676; 549 NW2d 325 (1996), amended in part on other grounds 453 Mich 1204 (1996), and *People v Tims*, 449 Mich 83, 96-97; 534 NW2d 675 (1995).

Thus, even if the victim's action of driving recklessly also constituted a proximate cause of her death, that fact does not indicate that there was insufficient evidence to establish that defendant's actions were also a proximate cause of her death. Additionally, defendant's explanation that the crash was an accident was apparently rejected by the jury, whose role it is to make credibility determinations and weigh the evidence. See *People v Wolfe*, 440 Mich 508, 514-515; 489 NW2d 748 (1992), amended on other grounds 441 Mich 1201 (1992).

Next, the defendant argues that both his reckless driving causing death and second-degree murder sentences constitute cruel and/or unusual punishment. A defendant must raise a claim that his sentences are unconstitutionally cruel or unusual in the trial court, *People v Bowling*, 299 Mich App 552, 557; 830 NW2d 800 (2013), and defendant did not do so. Thus, this issue is unpreserved. This Court reviews unpreserved issues for plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). In order for defendant to satisfy the plain error test, "three requirements must be met: (1) error must have occurred, (2) the error was plain, i.e., clear or obvious, (3) and the plain error affected [his] substantial rights." *Id*. "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. (internal citation and quotations omitted).

The Eighth Amendment of the United States Constitution provides, "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." US Const, Am VIII. The Michigan Constitution provides, "cruel or unusual punishment shall not be inflicted . . . ." Const 1963, art 1, § 16. The federal constitutional prohibition against cruel and unusual punishment affords lesser protection than the state constitutional prohibition against cruel or unusual punishment. *People v Nunez*, 242 Mich App 610, 618 n 2; 619 NW2d 550 (2000). If a punishment "passes muster under the state constitution, then it necessarily passes muster under the federal constitution." *Id*. "In determining whether a sentence is cruel or unusual [this Court] look[s] to the gravity of the offense and the harshness of the penalty, comparing the penalty to those imposed for other crimes in this state as well as the penalty imposed for the same offense by other states and considering the goal of rehabilitation." *People v Poole*, 218 Mich App 702, 715; 555 NW2d 485 (1996). "[A] sentence that is proportionate is not cruel or unusual punishment." *People v Powell*, 278 Mich App 318, 323; 750 NW2d 607 (2008), citing *People v Drohan*, 264 Mich App 77, 92; 689 NW2d 750 (2004). Where a sentence falls within the appropriate guidelines range, it is presumed to be proportionate. *Id*. "In order to overcome the presumption that the sentence is proportionate, a defendant must present unusual circumstances that would render the presumptively proportionate sentence disproportionate." *People v Lee*, 243 Mich App 163, 187; 622 NW2d 71 (2000).

Defendant does not dispute that his second-degree murder sentence is within the minimum sentencing guidelines range; rather, defendant contends that his sentence is disproportionate because of unusual circumstances. Specifically, defendant argues that his age, minimal recent prior criminal history, and the quality of the evidence presented during his trial[1] amount to unusual circumstances that cause his sentence to amount to cruel and unusual punishment in violation of the United States and Michigan Constitutions. However, defendant's age and limited recent criminal history do not amount to unusual circumstances that render his presumptively proportionate sentence disproportionate. First, defendant suggests that his sentences are cruel or unusual because of his age, 39, but he fails to explain why that factor should be considered unusual or why it renders his sentence disproportionate. Moreover, our Supreme Court has held that a court is not required to consider a defendant's age in determining whether a sentence is disproportionate. *People v Lemons*, 454 Mich 234, 258-259; 562 NW2d 447 (1997). "Furthermore, defendant's age is insufficient to overcome the presumptive proportionality of his sentences." *Bowling*, 299 Mich App at 558.

Second, while defendant had no criminal contact between 2004 and the date of the instant offenses, his entire criminal history is extensive. His prior record consists of two felony convictions and four misdemeanor convictions. He also has an extensive juvenile record. While an extensive criminal history has been a factor properly considered in the proportionality of a sentence, a lack of recent criminal history is not an unusual circumstance that would render a presumptively proportionate sentence disproportionate. See *People v Babcock*, 469 Mich 247;

---

[1] Defendant suggests that his sentence is cruel and unusual because it was based on insufficient evidence. However, as this Court noted in *Powell*, 278 Mich App at 323, if that were true, "the remedy would be to vacate his conviction." Nonetheless, as discussed above, defendant's convictions were not based on insufficient evidence.

666 NW2d 231 (2003). Additionally, an extensive criminal history is usually a factor considered in an upward departure, and not a factor used to demonstrate the harshness of a sentence. See *Powell*, 278 Mich App at 319 (defendant's sentence was not cruel and unusual under federal and state constitutions because rehabilitation was not a realistic goal in light of his criminal history where the defendant "was sentenced as habitual offender, fourth offense, [] was on parole at time of offense," and had a criminal history that "spanned a period of 28 years and included several prior prison terms.").

Defendant has also failed to demonstrate that his sentence is cruel or unusual in comparison to the penalties imposed for other crimes in this state or for the same crimes in other states. *People v Brown*, 294 Mich App 377, 390; 811 NW2d 531 (2011). Defendant offers no argument or evidence that, in relation to other crimes and other states, his sentences were somehow abnormally harsh. A defendant may not simply "announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position." *People v Kevorkian*, 248 Mich App 373, 389; 639 NW2d 291 (2001) (quotation marks and citation omitted).[2]

In sum, defendant's age and limited recent criminal history do not amount to unusual circumstances that render his presumptively proportionate sentence disproportionate. Defendant has also failed to demonstrate that his sentence is cruel or unusual in comparison to the penalties imposed for other crimes in this state or for the same crimes in other states. As a result, defendant has not overcome the presumption of proportionality, and because a proportionate sentence is not cruel or unusual, defendant has not established a constitutional violation.

Defendant argues that his reckless driving causing death sentence is disproportionate as it falls outside of the appropriate minimum sentence range and it therefore constitutes cruel or unusual punishment. As defendant argues, the trial court seems to have departed from the minimum range recommended by the sentencing guidelines as a result of the miscalculation by scoring defendant's guidelines as if he were in PRV level D instead of C. However, when a defendant is sentenced to multiple concurrent sentences, a trial court is only required to use at sentencing a sentencing information report covering the defendant's conviction for the crime having the highest crime class. *People v Mack*, 265 Mich App 122, 127-128; 695 NW2d 342 (2005). The guidelines are not required to be scored for the lower crime class offenses as "there would be no tangible reason or benefit in establishing guideline ranges for the lower-crime-class

---

[2] *Solem v Helm*, 463 US 277, 303; 103 S Ct 3001; 77 L Ed 2d 637 (1983), is easily distinguishable. In *Solem*, the defendant received a life sentence for writing a fraudulent check for $100 because of his past criminal history. The United States Supreme Court held that the defendant's punishment was cruel and unusual because the defendant received the maximum sentence for relatively minor criminal conduct, he had been treated more harshly than other criminals in the State who have committed more serious crimes, and he had been treated more harshly than he would have been in any other jurisdictions. In this case defendant was convicted of a serious crime, second-degree murder, and his sentence was within the minimum sentencing guidelines range.

offenses" given that the "the guidelines range for the highest-crime-class offense would subsume the guidelines range for lower-crime-class offenses." *People v Lopez*, 305 Mich App 686, 691-692; 854 NW2d 205 (2014).

Second-degree murder is a class M2 offense,[3] whereas reckless driving causing death is a Class C felony. In this case, as in *Lopez*, the trial court properly scored defendant's most serious offense, second-degree murder. As in *Lopez*, the trial court sentenced defendant to concurrent prison terms. Defendant does not contend that the trial court erred in calculating his sentence for second-degree murder, another similarity to the defendant in *Lopez*. Accordingly, the trial court did not need to score the guidelines for defendant's reckless driving causing death conviction because the court correctly sentenced him for his highest-class offense and because the court sentenced him to concurrent prison terms. See *Lopez*, 305 Mich App at 692. Hence, while it appears the trial judge inadvertently departed on defendant's reckless driving causing death sentence, there was no error and defendant's sentences do not amount to cruel or unusual punishment.

In his Standard 4 Brief on Appeal, defendant makes several arguments. First, defendant argues that as a result of several procedural errors, the trial court never obtained jurisdiction over him, and thus, he is entitled to have his convictions reversed and dismissed. Whether a court has jurisdiction over a matter is a question of law reviewed de novo. *People v Laws*, 218 Mich App 447, 451; 554 NW2d 586 (1996).

Defendant contends that the felony complaint and warrant were improper because they were signed by an assistant prosecutor rather than the complaining witness and the prosecutor as required. To the contrary, however, an assistant prosecutor has the authority to sign the felony complaint and warrant. MCL 49.42 provides, in relevant part, that an "assistant prosecuting attorney shall . . . perform any and all duties pertaining to the office of prosecuting attorney at such time or times as he may be required so to do by the prosecuting attorney and during the absence or disability from any cause of the prosecuting attorney[.]" Defendant's complaint was signed by an assistant prosecutor and a complaining witness on March 5, 2014, in front of a magistrate. Therefore, the felony complaint satisfied the statutory requirements, there was no error, and defendant's argument lacks merit.

Next, defendant argues that the complaint was not properly "sworn-to," and thus, a warrant was not properly issued and the circuit court never obtained jurisdiction over him. In the alternative it seems that defendant argues that he did not have a probable cause hearing and as a result, all proceedings subsequent to the nonexistent probable cause hearing are null and void.

A criminal complaint serves to "initiate[ ] the judicial phase of the prosecution and provide[ ] a basis for the issuance of an arrest warrant." *People v Burrill*, 391 Mich 124, 128; 214 NW2d 823 (1974). "A magistrate shall issue a warrant upon presentation of a proper

---

[3] All offenses to which the guidelines apply are classified as belonging to one of nine crime classes depending on crime type and seriousness. The crime classes are second-degree murder (M2) and classes A, B, C, D, E, F, G, and H2. Sentencing Guidelines Manual, "Definitions."

complaint alleging the commission of an offense and a finding of reasonable cause to believe that the individual accused in the complaint committed that offense. The complaint shall be sworn to before a magistrate or clerk." MCL 764.1a(1). "A finding of probable cause may be based on . . . the testimony of a sworn witness adequately preserved to permit review[.]" MCR 6.102(B).

The complaint in this case contained the following information: 1) the date of the offense, June 24, 2013; 2) the location where the offense occurred, eastbound I-94 near Schaefer in Detroit; 3) the charge of second-degree murder for defendant's killing of the victim; 4) the charge of reckless driving causing death for driving recklessly resulting in the victim's death; 5) the count alleging defendant's status as a third habitual offender; 6) an assistant prosecutor's signature; and 7) the complaining witnesses signature.

Defendant contends that the complaint was not sufficient because the record regarding the warrant was not adequately preserved. However, MCR 6.102(B) allows the magistrate to rely on "the testimony of a sworn witness adequately preserved to permit review" to support a probable cause determination. But the magistrate may also rely on other sources. MCR 6.102(B). Here, the factual allegations in the signed complaint itself were sufficient to support the magistrate's probable cause determination and there is no indication that the magistrate relied on oral testimony that was not properly preserved. Thus, the complaint satisfied the requirements in MCR 6.101(A) and (B), and served to properly commence the judicial proceedings against defendant. *Burrill*, 391 Mich at 128.[4]

When a defendant is brought before a magistrate, and charged with an offense, it is necessary that a preliminary examination be had or waived before the defendant can be bound over to the higher court for trial. *People v Hunt*, 442 Mich 359, 362; 501 NW2d 151 (1993). "The purpose of a preliminary examination is to determine whether probable cause exists to believe that a crime was committed and that the defendant committed it." *People v Lowery*, 274 Mich App 684, 685; 736 NW2d 586 (2007). "Absent the required showing of probable cause by the prosecution, there cannot be a proper bind over. It is the bind over, or waiver, that authorizes the prosecution to file an information against the defendant in circuit court." *Hunt*, 442 Mich at 362.

In this case defendant had a preliminary examination on April 28, 2014. Defendant was present at the preliminary examination and was represented by counsel. Thus, there was a probable cause determination made at the preliminary hearing, there was no error, and defendant's argument lacks merit.[5]

---

[4] Even assuming that the complaint did not follow the proper procedure to justify the issuance of an arrest warrant, defendant would have no right to relief. See *Burrill*, 391 Mich at 132-134.

[5] Defendant also argues that there was no return to the circuit court after the district court bound him over, and thus, the circuit court did not have jurisdiction over his case. However, not only does the file contain the actual return, but the file also contains the form referencing MCR 6.110 that certified the transmittal of bind over after examination. In that document the district court

In his Standard 4 Brief on Appeal, defendant also argues that the trial court violated his constitutional right to counsel of choice by denying defense counsel's request to withdraw.

Whether defendant was denied his constitutional right to counsel of his choice is reviewed de novo. See *People v Grant*, 470 Mich 477, 485; 684 NW2d 686 (2004). A court's exercise of discretion regarding a defendant's choice of counsel is reviewed for an abuse of discretion. *People v Echavarria*, 233 Mich App 356, 368; 592 NW2d 737 (1999). An abuse of discretion occurs when the decision is outside the range of reasonable and principled outcomes. *People v Strickland*, 293 Mich App 393, 397; 810 NW2d 660 (2011). An erroneous deprivation of a defendant's right to retained counsel of his choice is a structural error requiring reversal. *United States v Gonzalez-Lopez*, 548 US 140, 148-149; 126 S Ct 2557; 165 L Ed 2d 409 (2006).

The right to counsel is guaranteed by both the Fifth and Sixth Amendments to the United States Constitution, as well as Const 1963, art 1, §§ 17 and 20. *People v Russell*, 471 Mich 182, 187; 684 NW2d 745 (2004); *People v Odom*, 276 Mich App 407, 415; 740 NW2d 557 (2007). The right to counsel guaranteed by the Michigan Constitution is generally the same as that guaranteed by the Sixth Amendment. *People v Aceval*, 282 Mich App 379, 386; 764 NW2d 285 (2009). The constitutional right to counsel encompasses the right of a defendant to choose his own retained counsel. US Const, Am VI; US Const, Am XIV; 1963 Const, art 1, §§ 13 and 20; *Gonzalez-Lopez*, 548 US at 144; *Aceval*, 282 Mich App at 386. However, the right is not absolute and a court must balance the defendant's right to choice of counsel against the public's interest in the prompt and efficient administration of justice. *Aceval*, 282 Mich App at 386-387. "Although substitution of counsel is a matter within the sound discretion of the trial court, a defendant must be afforded a reasonable time to select his own retained counsel." *People v Arquette*, 202 Mich App 227, 231; 507 NW2d 824 (1993) (citations omitted).

Appointment of substitute counsel is warranted only upon a showing of good cause and if substitution will not unreasonably disrupt the judicial process. *Strickland*, 293 Mich App at 397. Genuine disagreement over the use of a substantial defense or of a fundamental trial tactic is adequate cause, but a mere allegation that a defendant lacks confidence in his lawyer is not. *People v Traylor*, 245 Mich App 460, 462-463; 628 NW2d 120 (2001).

When reviewing a trial court's decision to deny a defense attorney's motion to withdraw or a defendant's motion for a continuance to obtain another attorney, this Court has considered the following factors:

> (1) whether the defendant is asserting a constitutional right, (2) whether the defendant has a legitimate reason for asserting the right, such as a bona fide dispute with his attorney, (3) whether the defendant was negligent in asserting his right, (4) whether the defendant is merely attempting to delay trial, and (5)

clerk certifies that certain documents were forwarded to the circuit court, including the return to circuit court. The document is dated May 2, 2014, and signed by the clerk. Therefore, contrary to defendant's assertions, the circuit court properly obtained personal jurisdiction over him *Goecke*, 457 Mich at 458-459, there was no error, and defendant's argument lacks merit.

whether the defendant demonstrated prejudice resulting from the trial court's decision. [*Echavarria*, 233 Mich App at 369.]

Defendant retained counsel for purposes of his trial. During the course of pretrial proceedings, there was no express indication that defendant and his retained counsel were experiencing any difficulties. It was only on the first scheduled date of trial, when witnesses were present, that defense counsel stated that he had been fired by defendant. Citing dissatisfaction with his current counsel's handling of his motions, defendant informed the trial court for the first time that he had discharge his attorney and wished to retain a different attorney. After the prosecutor indicated that it was ready to proceed, the trial court ruled that it would not allow defendant to discharge his counsel. Defendant became disruptive and was escorted out of the courtroom. The court took a short recess and attempted to have her deputies speak with defendant in the holding cell. Defendant was uncooperative and refused to speak except to assert that he "did not have a lawyer."

Addressing the factors set forth in *Echavarria*, the trial court did not abuse its discretion nor erroneously deprive defendant of his right to counsel of choice by denying counsel's motion to withdraw and delaying the trial on the day it was to begin in order to allow defendant to attempt to retain different counsel. See *Strickland*, 293 Mich App at 399 (holding that a substitution of counsel "would have unreasonably delayed the judicial process" where the defendant "waited until the day of trial to request new counsel[,]" [t]he jury and witnesses were present, and the prosecutor and defense counsel were ready to proceed."); see also *People v Weddell*, 485 Mich 942, 944; 774 NW2d 509 (2009).

Defendant was asserting a constitutional right, satisfying factor 1 set forth in *Echavarria*, 233 Mich App at 369. Defendant asserted that he was dissatisfied with counsel's performance regarding his motions, and thus, may have expressed a legitimate dispute between the two identified under factor 2. However, defendant was negligent in asserting his right under factor 3. The pretrial procedures continued without bringing the dispute to the court's attention until the very day of trial. Had defendant and defense counsel's relationship been strained to the point where withdrawal was necessary, the issue could have been addressed at any point prior to trial. As to factor 4, given that defendant had already terminated a previous attorney for similar reasons and was out on bond awaiting trial, the trial court found that defendant was most likely engaging in a delay tactic and ordered a competency examination to confirm that defendant's actions were not a result of another issue. Finally, defendant has not alleged any prejudice resulting from the trial court's decision. Defendant has identified nothing that a potential substitute attorney would have done differently. The trial court fully explored the circumstances for defendant's late request, weighed the competing interests, and made the decision that further delay was not appropriate, providing several reasonable bases for its decision. Thus, the trial court did not abuse its discretion in denying defense counsel's request to withdraw as counsel after defendant fired him.

Last, in his Standard 4 Brief on Appeal, defendant argues that he was the denied effective assistance of counsel. He claims that defense counsel's performance fell below an objective standard of reasonableness when he 1) failed to investigate and prepare a coherent trial strategy, 2) failed to present a substantial defense and pursue relief where the prosecutor failed to sign the complaint and warrant, and 3) failed to call a single witness on defendant's behalf at trial.

Defendant argues that these errors caused him prejudice and thus, he was afforded the ineffective assistance of counsel.

A timely motion for a new trial, which raises the issue of ineffective assistance of counsel, preserves the issue for appellate review. *People v Wilson*, 242 Mich App 350, 352; 619 NW2d 413 (2000). Alternatively, to preserve the issue for appeal, a defendant may request a *Ginther* hearing to make a separate factual record supporting the claim of ineffective assistance of counsel. *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973). In this case, defendant did not move for a new trial or request a *Ginther* hearing below and, as a result, this issue is not preserved.

"Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). Generally, the trial court's findings of fact are reviewed for clear error and the questions of constitutional law are reviewed de novo. *Id.* Unpreserved claims of ineffective assistance of counsel can still be reviewed, but review is limited to errors apparent in the record below. *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004).

The United States and Michigan Constitutions guarantee a defendant the right to effective assistance of counsel. US Const, Am VI; Const 1963, art 1, § 20. To establish ineffective assistance of counsel, a defendant must show: (1) that counsel's performance was below an objective standard of reasonableness under prevailing professional norms, and (2) that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceedings would have been different. *Strickland v Washington*, 466 US 668, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984); *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. *Strickland*, 466 US at 694.

Effective assistance of counsel is presumed, and the defendant bears a substantial burden of proving otherwise. *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012). A defendant can overcome the presumption by showing that counsel failed to perform an essential duty and that failure was prejudicial to the defendant. *People v Reinhardt*, 167 Mich App 584, 591; 423 NW2d 275 (1988), vacated on other grounds 436 Mich 866 (1990). Counsel's strategic judgments are afforded deference, but strategic choices made after an incomplete investigation are reasonable only to the extent that reasonable professional judgments support the limitation on investigation. *Wiggins v Smith*, 539 US 510, 521-522, 528; 123 S Ct 2527; 156 L Ed 2d 471 (2003); *Trakhtenberg*, 493 Mich at 52-55.

The failure to reasonably investigate a case can constitute ineffective assistance of counsel. *Trakhtenberg*, 493 Mich at 51-55. However, defense counsel has extensive discretion on matters of trial strategy. *People v Heft*, 299 Mich App 69, 83; 829 NW2d 266 (2012). Sound trial strategy is one "that is developed in concert with an investigation that is adequately supported by reasonable professional judgments." *Grant*, 470 Mich at 486-87. Decisions on whether to retain witnesses, including expert witnesses, are matters of trial strategy. *People v Ackerman*, 257 Mich App 434, 455; 669 NW2d 818 (2003). "[T]he failure to call witnesses only constitutes ineffective assistance of counsel if it deprives the defendant of a substantial defense." *People v Dixon*, 263 Mich App 393, 398; 688 NW2d 308 (2004). A substantial defense is one

that might have made a difference in the outcome of the trial. *People v Marshall*, 298 Mich App 607, 612; 830 NW2d 414 (2012), vacated in part on other grounds 493 Mich 1020 (2013).

Counsel's competence is not to be assessed with the benefit of hindsight. *People v Hill*, 257 Mich App 126, 139; 667 NW2d 78 (2003). Counsel will not be deemed ineffective for failing to pursue a meritless or futile position as "[t]he Sixth Amendment does not require that counsel do what is impossible or unethical." *People v Mitchell*, 454 Mich 145, 164; 560 NW2d 600 (1997), quoting *United States v Cronic*, 466 US 648, 656 n 19; 104 S Ct 2039; 80 L Ed 2d 657 (1984). Trial counsel is not ineffective when failing to make objections that are lacking in merit. *Matuszak*, 263 Mich App at 58.

As we have already concluded, defendant's complaint satisfied the statutory requirements, defendant had a preliminary examination on April 28, 2014, the lower court record does contain the return to circuit court, and there was no procedural error affecting the circuit court's jurisdiction. Because any objection or requests for relief on those grounds would have been unsuccessful, defense counsel's performance did not fall below an objective standard of reasonableness when he failed to continue to challenge the jurisdiction of the circuit court. *Matuszak*, 263 Mich App at 58.

Likewise, defendant's complaint was signed by an assistant prosecutor and a complaining witness on March 5, 2014, in front of a magistrate, satisfying the statutory requirements. Because any objection or other requests for relief on those grounds would have been unsuccessful, defense counsel's performance did not fall below an objective standard of reasonableness when he failed to continue to challenge the validity of the felony complaint and warrant. *Matuszak*, 263 Mich App at 58.

At trial, the only witness defense counsel called was Sargent Keely Cochran to verify that she did not actually sign the complaint. Defendant argues counsel should have also called witnesses "who would rebut state witnesses who attempted to establish a motive by accusing defendant of recent stalking of [the victim] and other aggressive and controlling behavior." Defendant claims witnesses could have established that defendant was not at the place described by the prosecutor's witnesses. However, defendant does not name any of these alleged potential exculpatory witnesses, and only asserts vague allegations relating to counsel's failure to call any witnesses, thus failing to establish a factual predicate for his claim of ineffective assistance of counsel. See *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001).

Defendant also argues that defense counsel's failure to call an expert witness to rebut the medical examiners opinion that the victim's cause of death was homicide amounted to ineffective assistance of counsel. However, failing to retain an expert does not always cause counsel's performance to fall below an objective standard of reasonableness, *LeBlanc*, 465 Mich at 582, and the testimony at trial from two witnesses established that defendant's car had intentionally pushed the victim's car off of the highway and into a cement barrier. The parties then stipulated that,

> if deputy chief medical examiner Leigh Hlavaty was present, she would testify
> that she is a Wayne county medical examiner, that she performed an autopsy on
> [the victim] . . . [and] her conclusions was that [the victim] died of multiple
> injuries sustained in an automobile accident, and based on the information she

received from the witnesses on the scene, she declared this manner of death to be homicide.

There is no record evidence that defense counsel failed to consult with an expert, or made his decision not to retain an expert before deciding on a trial strategy. Thus, defendant fails to overcome the presumption of sound trial strategy, and because counsel's performance is not measured with the benefit of hindsight, *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009), defendant cannot show that any failure on the part of defense counsel to retain or call an expert witness fell below an objective standard of reasonableness.

Even if failing to retain an expert did cause counsel's performance to fall below an objective standard of reasonableness in this case, defendant has also failed to show that "but for counsel's deficient performance, a different result would have been reasonably probable." *People v Armstrong*, 490 Mich 281, 290; 806 NW2d 676 (2011), citing *Strickland*, 466 US at 694-696. Defendant has merely speculated that an independent expert could have provided favorable testimony, and does not explain how a potentially favorable expert witness could have rebutted the testimony of two eyewitnesses who established that defendant's car had intentionally pushed the victim's car off the highway and into a cement barrier. Thus, defendant has failed to show that the retention of an independent expert would have altered the outcome of the trial court proceedings. *Carbin*, 463 Mich at 600. In sum, defendant's counsel's failure to call any witnesses or retain and call an expert witness did not fall below an objective standard of reasonableness or constitute ineffective assistance of counsel.

Affirmed.

/s/ Henry William Saad
/s/ Kurtis T. Wilder
/s/ Christopher M. Murray

-12-